CEDE & CO. and Cinerama, Inc., Petitioners Below, Appellants,

v.

TECHNICOLOR, INC., Respondent Below, Appellee.

CINERAMA, INC., a New York Corporation, Plaintiff Below, Appellant and Cross–Appellee,

v.

TECHNICOLOR, INC., a Delaware Corporation, Morton Kamerman, Arthur N. Ryan, Fred R. Sullivan, Guy M. Bjorkman, George Lewis, Richard M. Blanco, Jonathan T. Isham, MacAndrews & Forbes Group, Incorporated, a Delaware Corporation, Macanfor Corporation, a Delaware Corporation, and Ronald O. Perelman, Defendants Below, Appellees and Cross–Appellants.

Supreme Court of Delaware.

Submitted: Oct. 14, 1987.
Decided: June 10, 1988.

Gary J. Greenberg (argued), of counsel, New York City, Charles S. Crompton, Jr., Peter M. Sieglaff, Arthur L. Dent, of Potter Anderson & Corroon, Wilmington, for appellants Cede & Co. and appellant-cross-appellee Cinerama, Inc.

Thomas J. Allingham II (argued) of Skadden, Arps, Slate, Meagher & Flom, Wilmington, R. Franklin Balotti of Richards, Layton & Finger, Wilmington, for appellee and cross-appellants Technicolor, Inc.

Before HORSEY, MOORE and HOLLAND, JJ.

HORSEY, Justice:

We accepted this interlocutory appeal from the Court of Chancery to address a question of first impression in this Court: the standing and right of a minority shareholder who has dissented from a cash-out merger and commenced an appraisal proceeding under 8 *Del.C.* § 262 to assert and pursue a later-discovered individual claim of fraud in the merger through an action for rescissory damages against the participants for breach of fiduciary duty to the shareholder. This issue arises from a cash-out merger of the minority shareholders of Technicolor Incorporated ("Technicolor"), a Delaware corporation, accomplished by MacAndrews & Forbes Group Incorporated ("MAF") through the merger of its wholly-owned subsidiary, Macanfor Corporation ("Macanfor"), into Technicolor, following

approval by a majority of Technicolor's shareholders.

The appeal encompasses two suits, a first-filed statutory appraisal proceeding (the "appraisal action") and a later-filed shareholders' individual suit for damages for alleged fraud, conspiracy, self-dealing and waste of corporate assets (the "fraud action"). The plaintiffs are Cinerama, Incorporated, a beneficial owner of 201,200 shares of Technicolor common stock, approximately 4.5% of the total issued and outstanding common stock, and Cede & Company, the record owner of the shares of Technicolor owned beneficially by Cinerama.[1] Cinerama seeks to proceed to trial on both its appraisal remedy and its equitable claim against the several defendants, individual and corporate, for breach of fiduciary duty occurring in the merger.

The sole defendant in the appraisal action is Technicolor, the surviving corporation of the merger. The several individual and corporate defendants in the fraud action include Technicolor, all but two of the members of Technicolor's Board of Directors at the time of the merger,[2] and the chief architects of the merger, MAF, Macanfor, and Ronald O. Perelman, controlling shareholder and Chairman of MAF.[3]

Cinerama instituted its appraisal action pursuant to 8 *Del.C.* § 262 after voting against the merger. Approximately two years later, in the course of appraisal discovery, Cinerama came upon evidence of wrongdoing by Technicolor management associated with the merger. Cinerama then filed in the Court of Chancery its fraud action, charging the above-described defendants with conspiracy, fraud, breach of fiduciary duty, and other wrongdoing in the merger.

Defendants moved to dismiss the fraud action, asserting that Cinerama lacked standing to institute a fraud action after electing appraisal relief under section 262. Cinerama countered by moving the Court for alternative relief: (1) to amend its appraisal complaint to include its fraud and unfair dealing claims asserted in its fraud action; or (2) to consolidate for discovery and trial its appraisal and its fraud actions. Technicolor opposed both motions, and all defendants moved to dismiss Cinerama's fraud action on the grounds previously stated.

By opinion and interlocutory order dated January 13, 1987, the Court of Chancery, in an unreported decision, denied all three motions. While the effect of its rulings was to permit Cinerama to pursue independently both its appraisal and its fraud actions, the Court then ruled that Cinerama, after completing discovery, would be required to elect which of its two suits to bring to trial and which suit to abandon.

Both parties appeal the Court's several rulings. Cinerama appeals: (1) the Court's denial of its motion to amend its appraisal action; (2) the Court's ruling requiring Cinerama to make a binding election before trial between its appraisal remedy and its rescissory claim for damages; and (3) the Court's denial of Cinerama's motion to consolidate its appraisal and fraud suits. The defendants cross-appeal from the Court's denial of their motion to dismiss Cinerama's fraud action as barred by loss of standing through election of its appraisal remedy. Defendants also cross-appeal from the Court's election of remedy ruling, contending that Cinerama's election should be required to be made immediately and not deferred until Cinerama announces itself ready for trial.

We affirm the Chancellor's ruling declining to dismiss Cinerama's fraud action, but we reverse the Court's ruling declining to consolidate Cinerama's appraisal and

---

1. Hereinafter, Cinerama, Incorporated and Cede & Company shall be collectively referred to as "Cinerama."

2. The only Technicolor directors not joined were Charles S. Simone, who allegedly opposed the merger, and William R. Frye, by then deceased.

3. Perelman was Chairman of the Board and Chief Executive Officer of MAF. In addition to his position in MAF, he personally owned 38.4% of the common stock of MAF and, together with the other officers and directors of MAF, collectively owned more than 50% of the common stock of MAF.

fraud actions, requiring Cinerama to make a binding election of remedies before trial. Under the facts as alleged, Cinerama should not be put to an election of such disparate remedies; rather, the actions should be consolidated for trial. If Cinerama prevails, the Court will determine the appropriate remedies warranted by its findings.

I

The issues presented at this stage of the proceedings are purely legal; thus, only a brief sketch of the background facts is appropriate, simply to place the legal issues in a factual context. The litigation results from a cash-out merger of MAF's subsidiary, Macanfor, into Technicolor, which purportedly became effective on January 24, 1983, following a special meeting of the shareholders of Technicolor and their approval of the proposed merger. Prior to the shareholder vote on the merger, the Technicolor directors, purportedly by unanimous vote, waived Technicolor's charter requirement mandating a supermajority shareholder vote of 95% to effect a merger. The waiver by the directors of the supermajority requirements of the Technicolor charter, along with the merger itself, needed the approval of the Technicolor shareholders before becoming effective. The amendment to Technicolor's charter and the merger both received more than the required vote for approval, two-thirds of Technicolor's outstanding stock, with approximately 82% of Technicolor's shares being held by MAF/Macanfor at this time.[4]

Cinerama previously rejected Macanfor's tender offer of $23 per share for its shares and voted against the merger. Several days before the merger's effective date, Cinerama made demand upon Technicolor for appraisal of their shares pursuant to 8 *Del.C.* § 262(d)(1), and later within the re-

quired 120 days Cinerama commenced its appraisal action under 8 *Del.C.* § 262(e), requesting the Court of Chancery to determine the fair value of their Technicolor holdings. Cinerama alleges that it did not then seek to enjoin or otherwise attack the merger because it relied on Technicolor's representations made in connection with the tender offer and accompanying merger and, thus, had no basis for believing that any claim lay against defendants for fraud or unfair dealing in connection with the merger. After filing its appraisal action in March 1983, the Court of Chancery, in June 1983, entered an order declaring that Cinerama had perfected its appraisal rights and was entitled to then proceed with pretrial discovery pursuant to 8 *Del.C.* § 262(g) and (h).

Document discovery was essentially completed by Cinerama in mid–1985; thereafter, Cinerama began deposing the various Technicolor officers and directors. In the course of those depositions, Cinerama discovered facts that suggested fraud, illegality, and unfair dealing by Technicolor and the MAF and Macanfor architects of the merger. Specifically, Cinerama, in December 1985, discovered in deposing Charles S. Simone, a former director of Technicolor, that Simone had not voted with the other directors in purportedly waiving the 95% supermajority shareholder vote requirement of Technicolor's charter and had opposed and voted against the merger with Macanfor. As a consequence, Cinerama alleges in its fraud action that Technicolor's shareholder vote was legally insufficient for approval of the merger, causing the merger to be "void" *ab initio.* [5]

As a result of the Simone deposition and other facts learned in the course of discovery in the appraisal action, Cinerama filed a second suit in the Court of Chancery

---

**4.** Macanfor purchased 3,534,181 shares of Technicolor pursuant to a tender offer for all of Technicolor's outstanding common stock at a price of $23 per share, which, when combined with the 220,000 shares previously acquired, gave MAF/Macanfor control of approximately 82% of Technicolor's stock.

**5.** In absence of a waiver by the unanimous vote of the Board of Directors, since 95% of the issued and outstanding shares were not recorded as voting in favor of the merger at the January 24, 1983, shareholder meeting and MAF/Macanfor held less than 95% of the issued and outstanding shares, Cinerama alleges that the merger was not permitted under the terms of Technicolor's certificate of incorporation.

in January 1986, alleging fraud in the merger and unfair dealing on the part of defendants. As noted, Cinerama's fraud action charges Technicolor and the other defendants with multiple acts of wrongdoing and breaches of fiduciary duty in the merger, including: waste of assets, self-dealing, intentional and negligent misrepresentation, unfair dealing, accepting a grossly unfair price for Technicolor stock, and carrying out an unlawful merger in violation of Technicolor's certificate of incorporation. Through its fraud action, Cinerama seeks a judgment rescinding the merger or, alternatively, an award of rescissory damages and damages for all losses resulting from defendants' wrongdoing. Prior to answering, all of the defendants, in March 1986, moved to dismiss Cinerama's fraud action on grounds previously outlined—that Cinerama, having elected to file an appraisal petition, could not simultaneously pursue a fraud action arising out of the same merger.

In April 1986, Cinerama filed its previously described alternate motions, to amend and enlarge its appraisal petition to include the same allegations of fraud and unfair dealing contained in its fraud action or to consolidate the two actions. Following the Court of Chancery's rulings denying the respective parties' motions and cross-motions, the parties secured leave to file this interlocutory appeal.

On March 26, 1987, this Court accepted Cinerama's interlocutory appeal as well as defendants' interlocutory cross-appeal. After the parties briefed the interlocutory appeal in this Court, and only shortly before argument, the parties stipulated that all depositions taken in the appraisal action be admissible in the fraud action, subject to limitations on the use of Simone's deposition and the right of Technicolor to further depose him. Additionally, Technicolor agreed to produce for Cinerama's inspection all relevant financial statements from January 1, 1985 to the present.

## II

For the first time, this Court addresses the standing and right of a shareholder dissenting from a cash-out merger to pursue under Delaware law both an appraisal remedy under 8 *Del.C.* § 262 and a subsequent individual action for rescissory damages based on a later-discovered claim of fraud in the merger. The disparate nature of the two causes of action has been previously addressed by this Court in *Weinberger v. UOP, Inc.*, Del.Supr., 457 A.2d 701 (1983), and in *Rabkin v. Philip A. Hunt Chem. Corp.*, Del.Supr., 498 A.2d 1099 (1985). In each case, we stated that a statutory appraisal proceeding under section 262 and a rescissory suit for fraud, misrepresentation, self-dealing and other actionable wrongs violative of "entire fairness"[6] to minority shareholders serve different purposes and are designed to provide different, and not interchangeable, remedies.

An appraisal proceeding is a limited legislative remedy intended to provide shareholders dissenting from a merger on grounds of inadequacy of the offering price with a judicial determination of the intrinsic worth (fair value) of their shareholdings. *Weinberger*, 457 A.2d at 714; *Kaye v. Pantone Inc.*, Del.Ch., 395 A.2d 369, 374–75 (1978) (describing an appraisal remedy as "entirely a creature of statute"; "the sole issue raised by an action seeking an appraisal should be the value of the dissenting stockholder's stock"). Value was traditionally arrived at by determining "the true or intrinsic value" of the shareholders' proportionate interest in the company, valued on a going-concern rather than a liquidated basis. *See Universal City Studios, Inc. v. Francis I. duPont & Co.*, Del.Supr., 334 A.2d 216 (1975); *Tri–Continental Corp. v. Battye*, Del.Supr., 74 A.2d 71, 72 (1950).

*Weinberger* broadens or liberalizes the process for determining the "fair value" of the company's outstanding shares by including all generally accepted techniques of

---

6. In *Weinberger* we recognized that "[t]he concept of fairness has two basic aspects: fair dealing and fair price." 457 A.2d at 711.

valuation used in the financial community, thereby supplementing the previously employed rigid or stylized approach to valuation.[7] *See* 457 A.2d at 712–13. *Weinberger* directs that this "liberalized approach" to appraisal shall be used to determine the value of a cashed-out minority's share interest on the day of the merger, reflecting all relevant information regarding the company and its shares. *Id.* at 713. This includes information concerning future events not arising solely "from the accomplishment or expectation of the merger," 8 *Del.C.* § 262(h), which, if made public, can affect the current value of the shares and "which are known or susceptible of proof as of the date of the merger...." 457 A.2d at 713; 8 *Del.C.* § 262(h).[8]

In contrast to appraisal, entire fairness—fair price and fair dealing—is the focal point against which the merger transaction and consideration arrived at can be measured. *See Rabkin,* 498 A.2d at 1106 (unfair dealing claims, based on breaches of the duties of loyalty and care, raise "issues which an appraisal cannot address"); *Weinberger,* 457 A.2d at 714 ("[t]he appraisal remedy ... may not be adequate in certain cases, particularly where fraud, misrepresentation, self-dealing, deliberate waste of corporate assets, or gross and palpable overreaching are involved"). It is important to emphasize that "the test for fairness is not a bifurcated one as between fair dealing and price. *All aspects of the issue must be examined as a whole* since the question is one of *fairness." Id.* at 711 (emphasis added).

■ To summarize, in a section 262 appraisal action the only litigable issue is the determination of the value of the appraisal petitioners' shares on the date of the merger, the only party defendant is the surviving corporation and the only relief available is a judgment against the surviving corporation for the fair value of the dissenters' shares. In contrast, a fraud action asserting fair dealing and fair price claims affords an expansive remedy and is brought against the alleged wrongdoers to provide whatever relief the facts of a particular case may require. In evaluating claims involving violations of entire fairness, the trial court may include in its relief any damages sustained by the shareholders. *See Rabkin,* 498 A.2d at 1107; *Weinberger,* 457 A.2d at 713. In a fraud claim, the approach to determining relief *may* be the same as that employed in determining fair value under 8 *Del.C.* § 262.[9] However, an appraisal action may not provide a complete remedy for unfair dealing or fraud because a damage award in a fraud

**7.** This Court in *Weinberger* overruled the exclusive use of the so-called "Delaware Block" or weighted average method of determining value per share. *See* 457 A.2d at 712–13. We once again recognize that such a structured and mechanistic procedure is outmoded, with statutory appraisal requiring consideration of all relevant factors involving the value of the company. *See Tri–Continental Corp. v. Battye,* Del. Ch., 66 A.2d 910, 917–18 (1949); 8 *Del.C.* § 262(h).

**8.** Information and insight not communicated to the market may not be reflected in stock prices; thus, minority shareholders being cashed out may be deprived of part of the true investment value of their shares. *See generally* R. Clark, *Corporate Law* 507 (1986); Fama, *Efficient Capital Markets: A Review of Theory and Empirical Work,* 25 J.Fin. 383 (1970). The issue we are addressing is not the manipulation of the transaction, *see Rabkin,* 498 A.2d at 1104–05, nor the suppression or misstatement of *material* information by insiders defrauding the market, *see Basic Inc. v. Levinson,* — U.S. —, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988). Instead, we recognize that the majority may have insight into their company's future based primarily on bits and pieces of *nonmaterial* information that have value as a totality. *See* Clark, *supra* at 508. It is this information that, if available in a statutory appraisal proceeding, the Court of Chancery must evaluate to determine if future earnings will affect the fair value of shares on the day of the merger. *See* 8 *Del.C.* § 262(h). To obtain this information the appraisal petitioner must be permitted to conduct a "detailed investigation into the facts that is warranted by the acute conflict of interest and the potential for investor harm that is inherent in freezeout transactions." Clark, *supra* at 508.

**9.** This Court in *Weinberger* recognized that "[i]n this breach of fiduciary duty case, the Chancellor perceived that the approach to valuation was the same as that in an appraisal proceeding." 457 A.2d at 712. Although this Court overruled the exclusivity of the method used by the Chancellor, we did not reverse the Chancellor's decision to use the appraisal valuation approach for cases involving breaches of fiduciary duties.

action may include "rescissory damages if the [trier of fact] considers them susceptible of proof and a remedy appropriate to all issues of fairness before him." *Weinberger*, 457 A.2d at 714. *Weinberger* and *Rabkin* make this clear distinction in terms of the relief available in a section 262 action as opposed to a fraud in the merger suit.

## III

### A.

*Whether Cinerama's Subsequent Fraud Action Is Foreclosed by its Original Election of An Appraisal Remedy*

■ Applying these principles to the record before us, we find the Chancellor was clearly correct in refusing to dismiss Cinerama's fraud action. Given the distinctive nature of the remedies available to a cashed-out shareholder, the Chancellor properly declined to find Cinerama to lack standing to pursue its fraud claim. To rule that Cinerama, having elected to pursue an appraisal remedy under section 262, without apparent knowledge of a claim of fraud in the merger, was foreclosed from asserting a later-discovered claim of fraud in the merger, would have been clearly contrary to the teachings of *Weinberger* and *Rabkin*.

■ Defendants' reliance upon *Dofflemyer v. W.F. Hall Printing Co.*, D.Del., 558 F.Supp. 372 (1983), and *Braasch v. Goldschmidt*, Del.Ch., 199 A.2d 760 (1964), is misplaced. *Dofflemyer* and *Braasch* are decisions that were based on the doctrine that, by demanding appraisal, a former shareholder elects "to withdraw from the corporate enterprise and take the value of his stock," and, as a result, is divested of the rights appertaining to his shares. *Southern Production Co. v. Sabath*, Del.

Supr., 87 A.2d 128, 134 (1952). *Dofflemyer*, *Braasch*, and *Southern* derive from *Taormina v. Taormina Corp.*, Del.Ch., 78 A.2d 473 (1951), a shareholder derivative suit representing application of Court of Chancery Rule 23.1. As the Trial Court recognized, procedural requirements of standing developed to control derivative actions have no relevance to individual shareholder suits claiming a private wrong.[10] Standing to pursue a derivative claim for injury to the corporate entity should not be confused with the right of a former shareholder claimant to assert a timely filed private cause of action premised upon a claim of unfair dealing, illegality, or fraud. No one would assert that a former owner suing for loss of property through deception or fraud has lost standing to right the wrong that arguably caused the owner to relinquish ownership or possession of the property.

The Chancellor correctly equated the right of a shareholder who loses share membership through misrepresentation, conspiracy, fraud, or breach of fiduciary duty to seek redress with the right of a shareholder who dissents from a merger and seeks appraisal of his shares to seek redress after discovery of allegedly wrongful conduct. Fairness and consistency require equal recourse for a former shareholder who accepts a cash-out offer in ignorance of a later-discovered claim against management for breach of fiduciary duty and a shareholder who discovers such a claim after electing appraisal rights.

Moreover, policy considerations militate against foreclosing a shareholder electing appraisal rights from later bringing a fraud action based on after-discovered wrongdoing in the merger. Experience has shown that the great majority of minority

---

10. The fundamental distinction between derivative and individual claims is well established: Generally speaking, a wrong to the incorporated group as a whole that depletes or destroys corporate assets and reduces the value of the corporation's stock gives rise to a derivative action; a breach of an individual shareholder's 'membership' contract or some other interference with the rights that are traditionally viewed as incident to the individual's ownership of stock gives rise to a non-deriva-

tive, or direct, action by the injured shareholder or shareholders.
D. Block, N. Barton & S. Radin, *The Business Judgment Rule: Fiduciary Duties of Corporate Directors and Officers* at 216 (1987) (citing W. Cary & M. Eisenberg, *Cases and Materials on Corporations* 897 (5th ed. 1980); H. Henn & J. Alexander, *Laws of Corporations and Other Business & Enterprises* § 360, at 1048 (3d ed. 1983)).

shareholders in a freeze-out merger accept the cash-out consideration, notwithstanding the possible existence of a claim of unfair dealing, due to the risks of litigation. *See Joseph v. Shell Oil Co.,* Del.Ch., 498 A.2d 1117, 1122 (1985). With the majority of the minority shareholders tendering their shares, only shareholders pursuing discovery during an appraisal proceeding are likely to acquire the relevant information needed to pursue a fraud action if such information exists. Such shareholders, however, would not have any financial incentive to communicate their discovered claim of wrongdoing in the merger to the shareholders who tendered their shares for the consideration offered by the majority and, by tendering, have standing to file suit. Thus, to bar those seeking appraisal from asserting a later-discovered fraud claim may effectively immunize a controlling shareholder from answering to a fraud claim.

Defendants assert that it is inconsistent (or unfair) to permit both the fraud action and the appraisal action to proceed simultaneously. This argument is misguided. Cinerama is not seeking (nor would our courts permit) inconsistent remedial relief, but rather is simply pleading alternative causes of action. In the instant case, the merger occurred. If the merger was properly consummated, then 8 *Del.C.* § 262 affords Cinerama a claim for the fair value of its Technicolor shares. *See Felder v. Anderson, Clayton & Co.,* Del.Ch., 159 A.2d 278 (1960). If the merger was not lawfully effected, Cinerama should be entitled to recover rescissory damages, rendering the appraisal action moot.

Based upon the appraisal/fraud distinctions found in *Weinberger* and *Rabkin,* policy concerns, and considerations of equity, as a matter of law we affirm the Court of Chancery's ruling denying defendant's motion to dismiss Cinerama's fraud action. Under the record before us, the Chancellor properly allowed Cinerama to pursue both a statutory appraisal remedy and its fraud action; therefore, the defendants' cross-appeal, asserting that Cinerama lacked standing to pursue its fraud action, fails.

## B.

### *Whether Cinerama May Assert in its Appraisal Proceeding its Claim of Fraud in the Merger*

The Court of Chancery correctly denied Cinerama's motion to amend and enlarge its appraisal action to include its claim for rescissory relief for conspiracy, illegality, fraud, and breach of fiduciary duty. As previously noted, statutory appraisal is limited to "the payment of fair value of the shares ... by the surviving or resulting corporation." 8 *Del.C.* § 262(i). A determination of fair value does not involve an inquiry into claims of wrongdoing in the merger. *See Felder v. Anderson, Clayton & Co.,* Del.Ch., 159 A.2d 278 (1960); *see also* Weiss, *Balancing Interest in Cash–Out Mergers: The Promise of Weinberger v. UOP, Inc.,* 8 Del.J.Corp. L. 1, 8–9 (1983). In contrast, in a fraud action seeking monetary relief for unfair dealing, the focus of the suit is whether wrongdoing can be established, *see Weinberger,* 457 A.2d at 714. Hence, the necessary party defendants in a "fraud in the merger" action are the alleged wrongdoers because it is they who arguably caused the injury and should pay any damage award. To permit Cinerama to amend its statutory appraisal action to include its fraud claims would impermissibly broaden the legislative remedy. It would also fail to bring before the Court the necessary parties for the fashioning of any appropriate relief for a fraud.

Finally, to judicially expand an appraisal proceeding to include unfair dealing claims would likely create unforeseeable administrative and procedural problems for litigants and the courts. In most cases only a small proportion of shareholders will have perfected appraisal rights and thus have access to the expanded appraisal remedy. *See Joseph v. Shell Oil Co.,* 498 A.2d at 1122; *see also Rabkin,* 498 A.2d at 1107; 8 *Del.C.* § 262(d). If shareholders are permitted to litigate fraud claims in appraisal proceedings, shareholders not seeking appraisal would be required to litigate "entire fairness" claims identical to the claims litigated by shareholders with perfected ap-

praisal rights but through separate actions. This would create a substantial risk of inconsistent judgments and raise issues of collateral estoppel. *See Coca-Cola Co. v. Pepsi-Cola Co.*, Del.Super., 172 A. 260 (1934), *cited in Blonder-Tongue Lab., Inc. v. University of Ill. Found.*, 402 U.S. 313, 323 n. 9, 91 S.Ct. 1434, 1439 n. 9, 28 L.Ed. 2d 788 (1971).

On the several grounds stated, we conclude that the Court of Chancery did not abuse its discretion in denying Cinerama's motion to amend its appraisal action. *See* Ct.Ch.R. 15; *see also Bokat v. Getty Oil Co.*, Del.Supr., 262 A.2d 246 (1970).

### C.

*Whether Cinerama Should Be Put to an Election of Remedies before Trial or Both Claims Should Be Consolidated for Trial*

■ On this issue we find the Court of Chancery to have erred. Cinerama's motion to consolidate, for purposes of trial as well as discovery, its fraud and appraisal actions should have been granted. No rule of law required the Court to put Cinerama to an election of remedies before judgment. As we have found, the Court properly concluded that Cinerama was "not precluded from bringing an action to set aside the merger by reason of its earlier election to dissent and seek a judicial determination of the fair value of its shares." However, the Court incorrectly perceived that a shareholder in Cinerama's position then came under a "duty to choose" between the legislative conferred right to recover fair value for its shares and its equitable action for rescissory relief. The Court stated:

It does not follow from that conclusion, however, that a shareholder once he or she discovers facts giving rise to a litigable claim of fraud in the merger, is relieved from the duty to choose whether to accept the fact of the merger and exercise his statutory right to a judicial determination of a fair price or whether to attack the validity of the merger itself and seek to have it set aside or be awarded other equitable relief. Obviously these forms of relief are inconsistent and

at some point one must choose between them.

Without defining the origins of this perceived "duty," the Court found this duty to be a basis for rejecting Cinerama's argument that *Weinberger* had "expressly approved" joinder of a section 262 action and a suit for rescissory damages for breach of fiduciary duty or fraud in the underlying merger. In the Court's view, such a reading of *Weinberger* would "destroy the distinctive nature of an appraisal action and would ... result in an unwieldy form of action."

We know of no general substantive or procedural law that should require Cinerama to be put to a binding election before trial between its statutory right to receive fair value for its shares and an opportunity to litigate its fair dealing claims. The "duty" that the Court was alluding to implicates the doctrine of election of remedies, but the doctrine has no application in this case. "Broadly speaking, an election of remedies is the voluntary choice by a party to an action of one or more co-existing, but necessarily inconsistent and repugnant remedial rights growing out of the *same known facts....*" *Hannigan v. Italo-Petroleum Corp.*, Del.Super., 181 A. 4, 5 (1935) (emphasis added); *see also* 25 Am. Jur.2d *Election of Remedies* §§ 1–3 (1966); 28 C.J.S. *Election of Remedies* § 1 (1941). However, the alternative causes here pursued by Cinerama, of statutory appraisal and fraud in the merger, are not inconsistent or repugnant claims for relief arising out of the same known facts.

■ An appraisal proceeding and an equitable action for rescissory damages (for illegality or other wrongdoing in extinguishing minority shareholder interests) do not involve the assertion of inconsistent rights. The appraisal action seeks the enforcement of a statutory right that is different and distinct from the alleged wrong sought to be redressed by Cinerama's fraud action. The remedies, though very different, are not inconsistent or repugnant because one remedy is premised on a state of facts that is the alternative to, rather

than the converse of, the state of facts that forms the basis for recovery under the other remedy. *Cf. Farmers Bank of the State of Delaware v. Dickey*, Del.Super., 209 A.2d 752, 754 (1965). The election of remedies doctrine has no application to litigation where the remedies sought "are for the enforcement of different and distinct rights or the redress of different and distinct wrongs." 25 Am.Jur.2d *Election of Remedies* § 10, at 653 (1966).

Cinerama should not have been barred from proceeding to trial on its alternate claims for relief. During the consolidated proceeding, if it is determined that the merger should not have occurred due to fraud, breach of fiduciary duty, or other wrongdoing on the part of the defendants, then Cinerama's appraisal action will be rendered moot and Cinerama will be entitled to receive rescissory damages. If such wrongdoing on the part of the defendants is not found, and the merger was properly authorized, then Cinerama will be entitled to collect the fair value of its Technicolor shares pursuant to statutory appraisal and its fraud action will be dismissed. Under either scenario, Cinerama will be limited to a single recovery judgment.

■ Cinerama, therefore, is entitled to proceed simultaneously with its statutory and equitable claims for relief. What Cinerama may not do, however, is recover duplicative judgments or obtain double recovery. Since the doctrine of election of remedies has no application to this case, it necessarily follows that the Court of Chancery committed discretionary error in denying Cinerama's motion to consolidate and, thus, Cinerama's appraisal and fraud actions should be consolidated for trial as well as discovery purposes. *See La Chemise Lacoste v. Alligator Co.*, D.Del., 60 F.R.D. 164, 175 (1973); *American Employers' Ins. Co. v. King Resources Co.*, 10th Cir., 545 F.2d 1265, 1269 (1976).[11]

Consolidation of the actions is also necessary to put Cinerama in a position equivalent to the position it would arguably be in had defendants exercised "complete candor"[12] in disclosing all material information associated with the merger to the minority shareholders. Had Cinerama known at the time of the merger what it arguably learned through discovery, it is reasonable to assume that Cinerama would have first brought suit to enjoin the merger,[13] and if unsuccessful, Cinerama could still have perfected its appraisal rights.

To require Cinerama to make a binding election of remedies no later than the time that it announced itself to be ready for trial would deprive Cinerama of a cause of action it would have possessed had management made a full disclosure of all material information prior to the merger, as mandated by *Weinberger*. *See* 457 A.2d at 710. Assuming the defendants failed to exercise "complete candor" with the minority shareholders, the minority should not be placed in a worse position than if management had acted with "complete candor." *See Bershad v. Curtiss–Wright Corp.*, Del.

**11.** Decisions interpreting the Federal Rules of Civil Procedure are usually of great persuasive weight in the construction of parallel Delaware rules, *see Canaday v. Superior Court*, Del.Supr., 119 A.2d 347, 352 (1955); however, such decisions are not actually binding upon Delaware courts. *See Fusco v. Dauphin*, Del.Super., 75 A.2d 701, 702 (1950).

**12.** In defining "complete candor," this Court recognized that it is the responsibility of the Court of Chancery to:

examine what information defendants had and to measure it against what they gave to the minority stockholders, in a context in which 'complete candor' is required. In other words, the limited function of the Court was to determine whether defendants had disclosed all information in their possession germane to the transaction in issue. And by 'germane' we mean, for present purposes, information such as a reasonable shareholder would consider important in deciding whether to sell or retain stock.

\* \* \* \* \* \*

... Completeness, not adequacy, is both the norm and the mandate under present circumstances.

*Weinberger*, 457 A.2d at 710 (quoting *Lynch v. Vickers Energy Corp.*, Del.Supr., 383 A.2d 278, 281 (1977)); *see also Bershad v. Curtiss–Wright Corp.*, Del.Supr., 535 A.2d 840 (1987).

**13.** At this late date, there is a strong reluctance to "unwind" a merger. *See, e.g., Weinberger*, 457 A.2d at 714; *Updyke Assocs. v. Wellington Management Co.*, Del.Ch., C.A. No. 6298, Brown, V.C. (Feb. 3, 1982).

Supr., 535 A.2d 840 (1987). Thus, we hold that Cinerama should be permitted to exercise its appraisal rights while seeking rescissory damages in a consolidated action, subject to the limitation of a single recovery judgment.

We also note that the parties by their conduct after docketing this appeal demonstrated the feasibility and desirability of consolidation. The parties' September stipulation largely moots Technicolor's argument against consolidation to the extent it is based upon the assertion that the fraud action and the appraisal action involve widely separate stages of trial preparation. The stipulation provides that all depositions taken in the appraisal action shall be admissible in the fraud action, subject to limitations on the use of Charles Simone's deposition and the right of the defendants to further depose Mr. Simone. Additionally, Technicolor agreed to produce for Cinerama's inspection all relevant financial statements from January 1, 1985 to the present. Such an agreement significantly undercuts Technicolor's position against consolidation and the Court's ruling against consolidation. Moreover, it appears that much of the evidence not covered by the stipulation that will be presented by Cinerama concerning valuation under appraisal will be the same evidence presented during the fraud action. Hence, consolidation of the two actions should result in convenience and economy in the administration of both actions. *See* Court of Chancery Rule 42(a).[14]

Although the Court of Chancery correctly recognized the need to limit collateral attacks on cash-out mergers, it failed to account for the economy and procedural fairness that will result from the consolidation of the two actions. Thus, the ruling of the Court requiring Cinerama to make an election of remedies before trial and implicitly denying its motion to consolidate must be reversed. Cinerama will be permitted to consolidate its appraisal and its fraud ac-

tions for discovery as well as trial pursuant to Court of Chancery Rule 42(a).

## IV

The Court is aware that consolidation of these two actions may lead to certain procedural difficulties because the remedy available under entire fairness is broader than the scope of valuation permitted under 8 *Del.C.* § 262. In addition to perfecting statutory appraisal, shareholders may systematically file fraud actions as a method of seeking a larger recovery and thereby cause unnecessary litigation. However, a party who brings an unmeritorious suit asserting violations of entire fairness may be held liable for the costs of the litigation arising therefrom. Given the degree of sophistication our courts have in such matters, the financial risks associated with filing an unmeritorious claim are high. *See* Supr.Ct.R. 20(f), 33; Ct.Ch.R. 11. We recognize that we place a sizeable burden upon the Court of Chancery, but to hold otherwise would produce a result that would encourage withholding of material information by a majority shareholder to the minority shareholders' detriment.

Accordingly, the judgment of the Court of Chancery denying defendants' motion to dismiss Cinerama's fraud action is AFFIRMED and defendants' cross-appeal (asserting Cinerama's loss of standing) fails. The judgment denying Cinerama's motion to amend its appraisal action is AFFIRMED. The judgment requiring Cinerama to make an election of remedies (implicitly denying Cinerama's motion to consolidate its appraisal and fraud actions) is REVERSED, and defendants' cross-appeal (requiring an earlier election by Cinerama) necessarily falls. The causes are REMANDED, with directions that Cinerama be permitted to consolidate its two pending actions for further discovery and trial.

\*    \*    \*

---

**14.** Court of Chancery Rule 42(a) provides:

    **(a) Consolidation.** When actions involving a common question of law or fact are pending before the Court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

Affirmed in part; Reversed in part; and Remanded.