# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| SOLERA HOLDINGS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. NO.: N18C-08-315 AML CCLD |
| | ) | |
| XL SPECIALTY INSURANCE | ) | |
| COMPANY, ACE AMERICAN | ) | |
| INSURANCE COMPANY, | ) | |
| ILLINOIS NATIONAL INSURANCE | ) | |
| COMPANY, ARGUONAUT | ) | |
| INSURANCE COMPANY, HUDSON | ) | |
| INSURANCE COMPANY, | ) | |
| ENDURANCE AMERICAN | ) | |
| INSURANCE COMPANY, ZURICH | ) | |
| AMERICAN INSURANCE | ) | |
| COMPANY, LIBERTY INSURANCE | ) | |
| UNDERWRITERS INC., FEDERAL | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

Submitted: April 16, 2019
Decided: July 31, 2019

**Upon Defendants ACE American Insurance Company and Federal Insurance Company's Motion for Summary Judgment: Denied**

## OPINION

David J. Baldwin, Esquire, Carla M. Jones, Esquire of POTTER ANDERSON & CORROON LLP, Wilmington, Delaware, and Peter M. Gillon, Esquire, Alexander D. Hardiman, Esquire, Tamara D. Bruno, Esquire of PILLSBURY WINTHROP SHAW PITTMAN LLP, Washington, D.C., *Attorneys for* Plaintiff.

Gregory F. Fischer, Esquire of COZEN O'CONNOR, Wilmington, Delaware, and Angelo G. Savino, Esquire of COZEN O'CONNOR, New York, NY, *Attorneys for* Defendants ACE American Insurance Company and Federal Insurance Company.

Carmella P. Keener, Esquire of ROSENTHAL, MONHAIT & GODDESS, P.A, Wilmington, Delaware, *Attorney for* Defendants Endurance American Insurance Company and Liberty Insurance Underwriters Inc.

Ronald P. Schiller, Esquire, Michael R. Carlson, Esquire, Matthew N. Klebanoff, Esquire of HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER, Philadelphia, Pennsylvania, *Attorneys for* Defendant Endurance American Insurance Company.

Scott A. Schechter, Esquire, Matthew E. Mawby, Esquire of KAUFMAN BORGEEST & RYAN LLP, Valhalla, New York, *Attorneys for* Defendant Liberty Insurance Underwriters Inc.

Bruce W. McCullough, Esquire, of BODELL BOVÉ, LLC, Wilmington, Delaware, *Attorney for* Defendant Zurich American Insurance Company.

Bruce E. Jameson, Esquire, John G. Day, Esquire of PRICKETT, JONES & ELLIOTT, P.A., Wilmington, Delaware, and Tammy Yuen, Esquire, Kenneth M. McBrady, III, Esquire of SKARZYNSKI BLACK LLC, New York, New York *Attorneys for* Defendant XL Specialty Insurance Company.

Kurt M. Heyman, Esquire, Aaron M. Nelson, Esquire of HEYMAN ENERIO GATTUSO & HIRZEL LLP, Wilmington, Delaware, and Scott B. Schreiber, Esquire, James W. Thomas, Jr., Esquire of ARNOLD & PORTER KAYE SCHOLER LLP, Washington, D.C., *Attorneys for* Defendant Illinois National Insurance Company.

Stephen F. Dryden, Esquire of WEBER GALLAGHER SIMPSON STAPLETON FIRES & NEWBY, LLP, New Castle, Delaware, *Attorney for* Defendant Hudson Insurance Company.

John C. Phillips, Jr., Esquire, David A. Bilson, Esquire, of PHILLIPS, GOLDMAN, MCLAUGHLIN & HALL, P.A., Wilmington, DE, and Geoffrey W. Heineman, Esquire, Jung H. Park, Esquire of ROPERS, MAJESKI KOHN & BENTLEY, New York, New York, *Attorneys for* Defendant Argonaut Insurance Company.

**LeGrow, J.**

This case involves the interpretation of a directors' and officers' insurance policy, specifically whether that policy covers attorneys' fees and pre-judgment interest the insured company incurred defending an appraisal action. Plaintiff purchased primary and excess directors' and officers' liability insurance policies from Defendants. After Plaintiff was acquired by a private company in March 2016, several of Plaintiff's shareholders filed an appraisal action in the Delaware Court of Chancery. Plaintiff first notified Defendants of the appraisal action in January 2018, after a substantial portion of the litigation was complete. This dispute arose when Defendants denied Plaintiff coverage for expenses incurred defending the appraisal action. In response, Plaintiff initiated this breach of contract and declaratory judgment action against Defendants seeking coverage for pre-judgment interest and defense expenses incurred in the appraisal action. Defendants moved for summary judgment on all claims.

The pending motion presents three questions: (1) whether a "Securities Claim" under the insurance policies is limited to a claim alleging wrongdoing, (2) whether the policies cover pre-judgment interest on a non-covered loss, and (3) whether Plaintiff's acknowledged breach of the policies' consent-to-defense clause bars recovery of Plaintiff's defense expenses. Based on the policies' plain language, I conclude the appraisal action qualifies as a covered "Securities Claim" because that term's definition is not limited to claims of wrongdoing.

1

Additionally, because there is no limiting language in the policies' definition of "Loss," coverage for pre-judgment interest is not limited to covered losses. As to the defense expenses, Delaware law implies a prejudice requirement in insurance contract consent clauses, and Plaintiff's breach of the consent clause therefore does not bar coverage for defense expenses absent a showing of prejudice. Defendants' motion for summary judgment therefore is denied.

## FACTS AND PROCEDURAL BACKGROUND

Unless otherwise noted, the following facts are drawn from the complaint and the record provided by the parties.

### The D&O Policies

Plaintiff Solera Holdings, Inc. ("Solera") is a software company incorporated in Delaware. Defendants issued Solera's primary and excess directors' and officers' liability insurance policies. Defendants provided Solera's tower of insurance coverage for securities claims made between June 10, 2015 and June 10, 2016. Defendant XL Specialty Insurance Company ("XL") issued the primary policy (the "Policy") and the remaining defendants issued excess policies, which follow-form and incorporate the Policy's provisions.[1] The Policy provides $10 million in coverage, and the excess policies provide a total of $45 million in additional coverage.

---

[1] The Court's interpretation of the Policy's terms and conditions therefore applies to all Defendants.

Under the Policy, Defendants agreed to pay any "Loss resulting solely from any Securities Claim first made against [Solera] during the [p]olicy [p]eriod for a [w]rongful [a]ct."[2] The Policy defines a "Securities Claim" as a claim:

(1) [M]ade against [Solera] for any actual or alleged violation of any federal, state or local statute, regulation, or rule or common law regulating securities, including but not limited to the purchase or sale of, or offer to purchase or sell, securities, which is:

    (a) brought by any person or entity resulting from, the purchase or sale of, or offer to purchase or sell, securities of [Solera]; or

    (b) brought by a security holder of [Solera] with respect to such security holder's interest in securities of [Solera] . . .[3]

The Policy covers any "Loss" resulting from a Securities Claim, which includes "damages, judgments, settlements, pre-judgment and post-judgment interest or other amounts (including punitive, exemplary or multiplied damages, where insurable by law)" that Solera legally is obligated to pay and "Defense Expenses, including that portion of any settlement which represents the claimant's attorney's fees."[4] The policy defines "Defense Expenses" as the "reasonable and necessary

---

[2] Complaint Ex. 5 § I(C) [hereinafter "Policy"]. For reasons that are not clear, the movants did not argue in the pending motions that the Policy's limitation of coverage to claims made for "a [w]rongful [a]ct" precluded coverage for the Appraisal Action. Instead, the movants limited their argument to the meaning of the word "violation" in the definition of "Securities Claim." Accordingly, this opinion does not address or resolve the effect, if any, of the "wrongful act" language.

[3] Policy § II(S).

[4] *Id.* § II(O).

legal fees, expenses and other costs (including experts' fees): (1) incurred in the investigation, adjustment, settlement, defense and/or appeal of any [c]laim, [i]nvestigation [d]emand or [i]nterview . . ."[5] Under Section V of the Policy, Solera must obtain Defendants' consent before incurring any Defense Expenses (the "Consent Clause"). The Consent Clause makes clear that Solera may not "incur any Defense Expenses . . . or admit liability for, make any settlement offer with respect to, or settle any [c]laim without [Defendants'] consent, such consent not to be unreasonably delayed or withheld . . ."[6] Section VI of the Policy also contains a provision requiring Solera to provide Defendants timely notice of a claim as a condition to coverage (the "Notice Provision"). The Notice Provision contains a prejudice requirement, specifically:

> [a]s a condition precedent to any right to payment under [the Policy] . . . [Solera] shall give written notice to [Defendants] of each [c]laim or [i]nvestigation [d]emand as soon as practicable after it is first made . . . [i]n the event that [Solera] fail to provide timely notice to [Defendants] . . . [Defendants] shall not be entitled to deny coverage solely based on such untimely notice unless [Defendants] can demonstrate its interests were materially prejudiced by reason of such untimely notice.[7]

**The Appraisal Action**

Solera was a publicly traded company until it was acquired by an affiliate of Vista Equity Partners in March 2016. Solera first announced the merger in

---

[5] *Id.* § II(F).
[6] *Id.* § V(B).
[7] *Id.* § VI(A)(1).

4

September 2015. Following the announcement, a group of Solera's shareholders filed a class action against Solera, its directors and officers, and other companies involved in the merger for breach of fiduciary duty (the "Shareholder Action").[8] The Shareholder Action later was dismissed by the Court of Chancery for failure to state a claim.[9] In the meantime, a majority of Solera's shareholders approved the merger, and the transaction closed on March 3, 2016 for an agreed merger price of $55.85 per share.

On March 7, 2016, several shareholders filed an appraisal action under 8 *Del. C.* § 262 (the "Appraisal Action") seeking fair value for their shares.[10] The petitioners in the Appraisal Action claimed Solera's value at the time of the merger actually was $84.65 per share. A trial was held in the Appraisal Action in June 2017. On July 30, 2018, after post-trial briefing and argument, the Court of Chancery issued its final decision, finding the fair value of the petitioners' shares at the time of the merger was $53.95 per share, an amount less than the merger price. The Court of Chancery ordered Solera to pay the petitioners fair value for their shares at $53.95 per share plus pre-judgment interest of $38,387,821.61.[11] Solera incurred more than $13 million in attorneys' fees and other costs defending the Appraisal Action.

---

[8] *In re Solera Holdings, Inc. Stockholder Litigation*, C.A. No. 11524-CB (Del. Ch.).
[9] *In re Solera Holdings, Inc. Stockholder Litigation*, 2017 WL 57839 (Del. Ch. Jan. 5, 2017).
[10] *In re Appraisal of Solera Holdings, Inc.*, C.A. No. 12080-CB (Del. Ch.).
[11] *In re Appraisal of Solera Holdings, Inc.*, 2018 WL 3997578 (Del. Ch. Aug. 20, 2018) (ORDER).

**The Coverage Dispute**

Solera notified Defendants of the Shareholder Action on October 13, 2015, but the Court of Chancery dismissed that case before Solera's costs met the Policy's retention. On January 31, 2018, Solera notified Defendants of the Appraisal Action and requested coverage under the Policy. On April 17, 2018, XL issued Solera a letter denying coverage. Following the denial, Solera filed this action against Defendants for breach of contract and declaratory judgment, seeking coverage for the pre-judgment interest and defense expenses incurred in the Appraisal Action. Defendants ACE American Insurance Company ("ACE") and Federal Insurance Company ("Federal") moved for summary judgment (the "Motion"). Solera settled with XL after ACE and Federal filed the Motion,[12] and the remaining Defendants (the "Joining Defendants"), with the exception of Hudson Insurance Company, joined in the Motion.

**The Parties' Contentions**

In the Motion, Defendants argue they are not obligated to cover Solera's losses incurred in the Appraisal Action because an appraisal action is not a Securities Claim as defined in the Policy. Specifically, Defendants contend the Appraisal Action is not a claim for "violation" of any federal, state, or local statute, regulation, rule, or common law regulating securities because a "violation" of law

---

[12] *See* D.I. 97-98.

6

must involve wrongdoing, and allegations of wrongdoing are not required in an appraisal action. Defendants separately argue the pre-judgment interest award does not constitute a Loss under the Policy because the underlying fair value award indisputably is not a covered Loss. Finally, Defendants contend coverage for Solera's pre-notice defense expenses is barred because Solera incurred those expenses without Defendants' consent.

Although it did not file a cross-motion for summary judgment, Solera suggested in its briefing and at oral argument that the Court should deny the Motion and instead *sua sponte* grant summary judgment in Solera's favor. In support of its position, Solera first argues allegations of wrongdoing are not required for a claim to be a "violation" of law, and the Appraisal Action therefore is a Securities Claim within the meaning of the Policy. Solera also contends that the pre-judgment interest award meets the definition of a covered Loss under the Policy's plain language. Finally, Solera argues that because Defendants were not materially prejudiced by the late notice, they must cover the defense costs Solera incurred in the Appraisal Action.

## ANALYSIS

Summary judgment should be awarded if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to a judgment as a matter of law."[13]  When considering a motion

for summary judgment, the evidence and the inferences drawn from the evidence

are to be viewed in the light most favorable to the nonmoving party.[14]  The Court

will accept "as established all undisputed factual assertions . . . and accept the non-

movant's version of any disputed facts.  From those accepted facts[,] the [C]ourt

will draw all rational inferences which favor the non-moving party."[15]  A party

seeking summary judgment bears the initial burden of showing that no genuine

issue of material fact exists.[16]  If the movant makes such a showing, the burden

then shifts to the non-moving party to submit sufficient evidence to show that a

genuine factual issue, material to the outcome of the case, precludes judgment

before trial.[17]

**I.    An appraisal action under Section 262 is a Securities Claim within the meaning of the Policy.**

The Appraisal Action must fall within the Policy's definition of a Securities

Claim to trigger Defendants' coverage obligation.  The definition of a Securities

Claim includes a claim against Solera "for any actual or alleged violation of any

federal, state or local statute, regulation, or rule or common law regulating

---

[13] Super. Ct. Civ. R. 56(c).

[14] *Brzoska v. Olson*, 668 A.2d 1355, 1364 (Del. 1995); *Judah v. Del. Trust Co.*, 378 A.2d 624, 632 (Del. 1977).

[15] *Marro v. Gopez*, 1994 WL 45338, at *1 (Del. Super. Jan 18, 1994) (citing *Merrill v. Crothall-Am., Inc.*, 606 A.2d 96, 99-100 (Del. 1992)).

[16] *Moore v. Sizemore*, 405 A.2d 679, 680-81 (Del. 1979).

[17] *Id.*; *see also Brzoska*, 668 A.3d at 1364.

securities . . ."[18]  The Policy does not define the term "violation," but Defendants interpret the term to require allegations of wrongdoing.[19]  Defendants contend that because an appraisal action does not require a petitioner to prove any wrongdoing, the Appraisal Action is not a claim against Solera for a "violation" of law.[20] Solera, on the other hand, contends allegations of wrongdoing are not required in order to allege a "violation" of law under the Policy.  According to Solera, "the actual test is whether the appraisal statute creates a legal standard that Solera allegedly violated."[21]  Solera argues the Appraisal Action is a Securities Claim because an appraisal action under Section 262 inherently alleges a violation of the statutory obligation to provide shareholders fair value for their shares when they are cashed out of their position.[22]

---

[18] Policy § II(S).

[19] Citing *RSUI Indem. Co. v. Desai*, Defendants separately argue the Appraisal Action cannot be a claim "for" a violation of law. 2014 WL 4347821 (M.D. Fla. Sept. 2, 2014). *RSUI Indem. Co.* defines the word "for" as "in response to" or "as requital of." *Id.* at *4.  Defendants contend the Appraisal Action is not a response to a wrongful act, and "a Court's obligation in an appraisal action is not to grant 'relief' to any party as redress 'for' any wrongdoing . . . [r]ather, the Court's only obligation is to determine the fair value of the relevant shares." Opening Br. at 15. It is not clear that the term "for" is a separate element of the definition of a Securities Claim.  To the extent it is, however, the Appraisal Action was "for" a violation because it sought a remedy "in response to" what the petitioners contended was a merger price that did not confer fair value on Solera's shareholders.

[20] *See Cede & Co. v. Technicolor, Inc.*, 542 A.2d 1182, 1189 (Del. 1988) ("[S]tatutory appraisal is limited to 'the payment of fair value of the shares . . . by the surviving or resulting corporation.' . . . A determination of fair value does not involve an inquiry into claims of wrongdoing in the merger.").

[21] Pl.'s Answering Br. at 18.

[22] Solera alternatively argued that, even if the definition of "violation" necessarily implies wrongdoing, the course of the Appraisal Action involved substantial discovery and trial presentation around the dissenting shareholders' claim that the merger price was an unreliable measure of fair value because the process was "rigged" by Solera's founder.  Pl.'s Answering Br.

Interpretation of an insurance policy is a question of law.[23] When resolving a dispute involving the interpretation of an insurance policy, "a court should first seek to determine the parties' intent from the language of the insurance contract itself."[24] Clear and unambiguous contract language must be accorded its ordinary and usual meaning.[25] A contract is not ambiguous merely because the parties disagree about its proper construction.[26] Rather, ambiguity exists "when the provisions in controversy are reasonably or fairly susceptible of different interpretations."[27] If the contract language is unambiguous, "a party will be bound by its plain meaning because creating an ambiguity where none exists could, in effect, create a new contract with rights, liabilities and duties to which the parties had not assented."[28]

Here, the Policy's language is unambiguous. A Securities Claim includes any claim for an alleged violation of a law or rule regulating securities.[29] Because the Policy does not define "violation," the Court must "refer to the term['s] plain

at 2. The Court need not reach this issue because of its ruling that the word "violation" does not require wrongdoing under the Policy.

[23] *Emmons v. Hartford Underwriters Ins. Co.*, 697 A.2d 742, 745 (Del. 1997).

[24] *Verizon Communications Inc. v. Illinois National Ins. Co.*, 2017 WL 1149118, at *8 (Del. Super. Mar. 2, 2017) (quoting *Alstrin v. St. Paul Mercury Ins. Co.*, 179 F. Supp. 2d 376, 388 (D. Del. 2002)).

[25] *Rhone-Poulenc Basic Chemicals Co. v. American Motorists Ins. Co.*, 616 A.2d 1192, 1195 (Del. 1992).

[26] *Id.* at 1196.

[27] *Id.*

[28] *National Grange Mut. Ins. Co. v. Elegant Slumming, Inc.*, 59 A.3d 928, 931 (Del. 2013).

[29] Policy § II(S).

and ordinary meaning[].”[30]   Nothing in the Policy's use of the word "violation" purports to limit coverage only to claims containing allegations of wrongdoing because the common meaning of the word "violation" in this context is not limited to wrongdoing.  "Violation" simply means, among other things, a breach of the law and the contravention of a right or duty.[31]

If Defendants intended to limit coverage to claims alleging wrongdoing, the Policy could have used limiting language.  Their choice to use a broader word, like violation, must be given effect by this Court.[32]   In fact, the use of a word like "violation," which does not require a particular state of mind, was logical in the context of defining a Securities Claim.  Several laws regulating securities can be violated without any showing of scienter or wrongdoing.[33]   It follows that a Securities Claim is not limited under the Policy to violations of law alleging wrongdoing.

---

[30] *Verizon Communications Inc.*, 2017 WL 1149118, at *10 (citing *Virtual Business Enters., LLC v. Maryland Cas. Co.*, 2010 WL 1427409, at *5-6 (Del. Super. Apr. 9, 2010)).

[31] Black's Law Dictionary (11th ed. 2019) (defining "violation" as "[a]n infraction or breach of the law; a transgression" and "[t]he act of breaking or dishonoring the law; the contravention of a right or duty").

[32] *Segovia v. Equities First Holdings, LLC*, 2008 WL 2251218, at *9 (Del. Super. May 30, 2008) ("the Court must view the contracts as a whole and interpret them in a manner that gives 'a reasonable, lawful, and effective meaning to all the terms.'"). *See also Emmons*, 697 A.2d at 746 ("Contract interpretation that adds a limitation not found in the plain language of the contract is untenable.").

[33] *See* 15 U.S.C. § 77e(a), (c) (imposing strict liability on offerors and sellers of unregistered securities); 15 U.S.C. § 77k(a) (imposing strict liability for registration statements containing untrue statements of material fact or omissions); 15 U.S.C. § 77l(a)(2) (imposing strict liability on a person who sells securities based on a materially false or misleading prospectus or misleading oral statements); 15 U.S.C. § 78r(a) (imposing strict liability for false or misleading statements of material fact made in filings required under the Exchange Act).

Applying that interpretation to this case, the Appraisal Action is a Securities Claim under the Policy because the appraisal petition necessarily alleges a violation of law or rule. Under Delaware law, shareholders have the right to receive "fair value" for their shares when they are cashed out of their positions through certain types of mergers or consolidations. By its very nature, a demand for appraisal is an allegation that the company contravened that right by not paying shareholders the fair value to which they are entitled. This interpretation corresponds with the general understanding that a "violation" is "the contravention of a right or duty" or a "breach of the law." Accordingly, the Appraisal Action is a claim against Solera for a violation of law and therefore is a Securities Claim under the Policy. Defendants' motion for summary judgment on this basis therefore is denied.[34]

## II. Factual issues preclude summary judgment on whether the pre-judgment interest award is a "Loss" under the Policy.

Defendants separately argue that even if the Appraisal Action is a Securities Claim, the pre-judgment interest award does not meet the Policy's definition of a Loss. Under the Policy, a Loss includes "damages, judgments, settlements, pre-judgment and post-judgment interest or other amounts . . . that [Solera] is legally

---

[34] Although, as set forth below, the Court is denying Solera's request that the Court *sua sponte* grant Solera summary judgment, the Court's interpretation of this portion of the Policy constitutes its final resolution of the definition of a "Securities Claim."

obligated to pay . . ."[35]  The Court of Chancery ordered Solera to pay the dissenting shareholders the fair value of their shares at $53.95 per share and pre-judgment interest of $38,387,821.61, as required by Section 262(h).[36]  The parties agree the fair value amount is not a covered Loss.  Defendants, however, contend that because the fair value amount is not a covered Loss under the Policy, it follows that the pre-judgment interest on the fair value amount also is not a covered Loss.  Defendants admit this is a purely "logical" argument and cite to no authority or Policy provision supporting their interpretation.  In response, Solera argues Defendants' interpretation does not correspond to the Policy's unambiguous language, and a plain reading of the definition of Loss includes the pre-judgment interest awarded in the Appraisal Action.

Joining Defendants also separately argue that resolution of this issue depends on which state's law applies.[37]  Because the Policy lists a Texas address for Solera and Solera cites Texas law in its answering brief, Joining Defendants contend further analysis is needed regarding whether actual conflict exists between Delaware and Texas law.  Joining Defendants, however, do not identify any

---

[35] Policy § II(O).

[36] *See* 8 *Del. C.* § 262(h) ("[T]he Court shall determine the fair value of the shares . . . together with interest, if any, to be paid upon the amount determined to be the fair value . . . interest from the effective date of the merger through the date of payment of the judgment shall be compounded quarterly and shall accrue at 5% over the Federal Reserve discount rate (including any surcharge) as established from time to time during the period between the effective date of the merger and the date of payment of the judgment.").

[37] *See* D.I. 134 at 20-22.

specific conflicting law from Texas or any other state, and do not explain how another state's law might require a different interpretation of the Policy's plain language. The Court therefore assumes Delaware law applies.

Here, the Policy's definition of Loss is unambiguous. A Loss includes "pre-judgment and post-judgment interest . . . that [Solera] is legally obligated to pay." The parties do not dispute that the $38.3 million is pre-judgment interest or that Solera legally is obligated to pay that amount under Section 262(h) and the Court of Chancery's order. Defendants' argument that "Loss" includes pre-judgment interest only on a covered judgment is untethered to the language in the Policy. Nothing in the Policy limits coverage for an interest award to interest on a covered judgment. Had the parties intended to limit coverage in that manner, the Policy language easily could have reflected that limitation. For example, in *Verizon Communications Inc. v. Illinois National Insurance Company*, the definition of Loss in the insurance policy at issue included "judgments (including pre/post-judgment interest on a *covered* judgment)."[38] Here, however, the Policy's drafters chose a broader definition of Loss that includes all pre-judgment interest Solera legally is obligated to pay. The Court will not now insert more favorable language than the language Defendants chose during drafting.

---

[38] 2017 WL 1149118, at *2 n.13 (emphasis added).

14

Although the pre-judgment interest award may fall within the definition of a Loss, factual disputes remain regarding coverage of the pre-judgment interest, including whether other Policy provisions preclude coverage, whether Solera could have mitigated damages, and whether Solera actually paid the interest award. These and other issues cannot be resolved on the current record before the Court. Solera's request that the Court *sua sponte* grant summary judgment to Solera therefore is denied.

## III. Factual issues preclude summary judgment on whether Solera's late notice bars coverage for Defense Expenses.

Defendants next argue they are not obligated to cover Solera's pre-notice Defense Expenses because Solera incurred those costs without Defendants' consent. Solera incurred more than $13 million in attorneys' fees and other costs defending the Appraisal Action. The Policy provides coverage for Defense Expenses incurred in any Securities Claim, which includes "reasonable and necessary legal fees, expenses and other costs (including experts' fees): [] incurred in the investigation, adjustment, settlement, defense and/or appeal of any [c]laim, [i]nvestigation [d]emand or [i]nterview . . ."[39] Before incurring Defense Expenses, however, Solera was required to obtain Defendants' consent. Section V of the Policy specifically provides that Solera may not "incur any Defense Expenses . . . or admit liability for, make any settlement offer with respect to, or settle any

---

[39] Policy § II(F).

15

[c]laim without [Defendants'] consent, such consent not to be unreasonably delayed or withheld . . ."[40] The dissenting shareholders filed the Appraisal Action on March 7, 2016, but Solera did not provide notice of the Appraisal Action until January 31, 2018, after a substantial portion of the litigation, including trial, was complete.

Despite the late notice, Solera nevertheless maintains the Consent Clause does not bar coverage for Defense Expenses incurred before January 31, 2018. Solera relies on the language in the Notice Provision, which precludes coverage denial based on untimely notice unless "[Defendants] can demonstrate its interests were *materially prejudiced* by reason of such untimely notice."[41] Solera contends the material prejudice requirement for notice also applies to the Consent Clause.[42]

At oral argument, Solera cited *Allstate Ins. Co. v. Fie* for the contention that Delaware courts imply a prejudice requirement in consent clauses in insurance policies.[43] In *Allstate*, the insured agreed to a settlement without the insurer's consent, in violation of the policy's consent-to-settlement provision.[44] The Court found the insurer's allegation of breach of the consent provision created a

---

[40] *Id.* § V(B).

[41] *Id.* § VI(A)(1) (emphasis added).

[42] Solera indicated at oral argument it had abandoned the interrelated claims argument that appears in its answering brief.

[43] 2006 WL 1520088, at *3-4 (Del. Super. Mar. 9. 2006).

[44] *Id.* at *3.

rebuttable presumption that the settlement prejudiced the insurer.[45] The burden then shifted to the insured to prove through competent evidence a lack of prejudice to the insurer.[46] In several other Delaware cases, this Court similarly implied a prejudice requirement in a breach of a consent-to-settlement clause.[47]

I cannot find any reason why the implied prejudice requirement that Delaware courts apply to consent-to-settle clauses would not also apply to the Consent Clause in this case. Both consent-to-settle and consent-to-defense provisions are meant to allow the insurer a meaningful opportunity to participate in litigation and to protect the insurer from prejudice, but a strict interpretation of either provision would lead to forfeiture of coverage.[48] Implying the prejudice requirement in both circumstances protects an insured who has breached a consent provision from the harsh result of forfeiture, but only if the insured can prove by competent evidence a lack of prejudice to the insurer.

Solera admits it breached the Consent Clause by failing to give Defendants timely notice of the Appraisal Action. Under Delaware law, however, Solera's breach of the consent clause does not automatically bar coverage. Instead, the presumption arises that Defendants were prejudiced by the breach, but Solera may

---

[45] *Id.* at *4.
[46] *Id.*
[47] *Arch Insurance Co. v. Murdock*, 2019 WL 2005750, at *10-11 (Del. Super. May 7, 2019); *Sun-Times Media Group, Inc. v. Royal & Sunalliance Ins. Co. of Canada*, 2007 WL 1811265, at *12-13 (Del. Super. June 20, 2007); *Hall v. Allstate Ins. Co.*, 1985 WL 1137299, at *9-11 (Del. Super. Jan. 11, 1985).
[48] *See Hall*, 1985 WL 1137299, at *8.

rebut that presumption. Solera argues the late notice did not prejudice Defendants because Solera successfully defended the Appraisal Action and obtained a fair value determination for less than the merger price. Solera contends that because Defendants were not prejudiced, the Court should grant summary judgment in its favor and conclude the Consent Clause does not bar coverage for pre-notice Defense Expenses. Prejudice, however, is a factual question that generally cannot be resolved on a motion for summary judgment.[49]

At this point in the litigation, a ruling in either party's favor would be premature. The Appraisal Action's outcome, although favorable to Solera, is not sufficient evidence at this stage that the late notice and inability to consent to Defense Expenses was not prejudicial to Defendants. Factual disputes remain regarding the prejudicial effect of Defendants' lack of participation in the defense. Because there are genuine issues of material fact as to whether Solera's untimely notice bars coverage for Defense Expenses, neither party is entitled to summary judgment on this issue.

---

[49] *Murdock*, 2019 WL 2005750, at *10; *Fie*, 2006 WL 1520088, at *4; *Hall*, 1985 WL 1137299, at *9.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is **DENIED**, and Plaintiff's request that the Court grant Summary Judgment *sua sponte* also is **DENIED**.