EFiled: Mar 21 2025 08:00AM EDT
Transaction ID 75906213
Case No. 2019-0798-JTL

# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| IN RE SEARS HOMETOWN AND OUTLET STORES, INC. STOCKHOLDER LITIGATION | ) ) | CONSOLIDATED C.A. No. 2019-0798-JTL |

## MEMORANDUM OPINION DECLINING TO CERTIFY INTERLOCUTORY APPEAL

Date Submitted: March 12, 2025
Date Decided: March 21, 2025

Thomas A. Uebler, Brian V. DeMott, Terisa A. Shoremount, MCCOLLOM D'EMILIO SMITH UEBLER LLC, Wilmington, Delaware; *Counsel for Cannon Square, LLC*

Ned Weinberger, Mark Richardson, Michael C. Wagner, Jiahui (Rose) Wang, LABATON KELLER SUCHAROW LLP, Wilmington, Delaware; Peter B. Andrews, Craig J. Springer, David M. Sborz, Christopher P. Quinn, ANDREWS & SPRINGER LLC, Wilmington, Delaware; Samuel L. Closic, Seth T. Ford, Robert B. Lackey, PRICKETT, JONES & ELLIOTT, P.A., Wilmington, Delaware; David Schwartz, John Vielandi, LABATON KELLER SUCHAROW LLP, New York, New York; Carl L. Stine, Adam J. Blander, WOLF POPPER LLP, New York, New York; *Counsel for Co-Lead Plaintiffs*; Donald J. Enright, Elizabeth K. Tripodi, LEVI & KORSINSKY, LLP, Washington, District of Columbia; *Executive Committee for Co-Lead Plaintiffs*.

Michael A. Pittenger, Matthew E. Fischer, Jacqueline A. Rogers, Nicholas D. Mozal, Charles P. Wood, POTTER ANDERSON & CORROON LLP, Wilmington, Delaware; *Counsel for Defendants Edward S. Lampert, ESL Investments, Inc., ESL Partners, LP, RBS Partners, LP, Transform Holdco LLC, and Hometown Midco LLC*.

**LASTER, V.C.**

A controller engaged in a squeeze-out merger that eliminated the minority for $3.21 per share. An investment fund sought appraisal. Other stockholders pursued a plenary class action asserting claims for breach of fiduciary duty.

The fund became a general creditor of the surviving corporation by opting for appraisal. The fund also became a general creditor of the surviving corporation's post-merger parent, because under the merger agreement, the fund could receive the merger consideration from the post-merger parent if its appraisal claim terminated.

During the appraisal proceeding, the controller caused the surviving corporation and its post-merger parent to file for bankruptcy. Both are insolvent; their general creditors will receive nothing.

With those paths of recovery foreclosed, the fund opted to participate in the plenary class action. After trial, the court held that the controller acted disloyally by effectuating the squeeze-out merger and found that a fair price was $4.06 per share. Focusing on the plenary class members who received the merger consideration, the court awarded incremental compensatory damages equal to their out-of-pocket loss, or $0.85 per share (the "*Post-Trial Opinion*").[1]

The fund had not received the merger consideration, so the fund intervened to establish its entitlement to the full fair-price damages award. The controller insisted that the fund could only receive incremental compensatory damages, effectively

---

[1] *In re Sears Hometown & Outlet Stores, Inc. S'holder Litig.*, 309 A.3d 474 (Del. Ch. 2024), *modified on reargument*, 2024 WL 3555781 (Del. Ch. July 2, 2024).

offsetting the fund's plenary recovery with merger consideration the fund never received.

Relying on the Delaware Supreme Court's decision in *Technicolor*[2] and this court's decision in *Mindbody*,[3] *Emerging Communications*[4] and *Dole Food*,[5] the court held that the fund could recover the full measure of fair-price damages (the "*Remedy Opinion*").[6] The court reasoned that the fund had the same entitlement to damages as every other class member, but unlike the other class members, the fund had not received the merger consideration. For the other class members, the merger consideration functioned as an offset of $3.21 per share. The fund had nothing to offset. The fund was therefore entitled to $4.06 per share.

The controller asked the court to certify an interlocutory appeal. This opinion denies the application. First, the application was untimely. Second, the *Remedy Opinion* did not resolve a substantial issue, nor does it meet any other criteria for

---

[2] *Cede & Co. v. Technicolor, Inc.*, 542 A.2d 1182 (Del. 1988).

[3] *In re Mindbody, Inc., S'holder Litig.*, 2023 WL 7704774 (Del. Ch. Nov. 15, 2023), *aff'd in pertinent part*, 2024 WL 4926910 (Del. Dec. 2, 2024).

[4] *In re Emerging Commc'ns, Inc. S'holders Litig.*, 2004 WL 1305745 (Del. Ch. May 3, 2004).

[5] *In re Dole Food Co., Inc. S'holder Litig.*, 2015 WL 5052214 (Del. Ch. Aug. 27, 2015).

[6] *In re Sears Hometown & Outlet Stores, Inc. S'holder Litig.*, — A.3d —, 2024 WL 5403534 (Del. Ch. Feb. 13, 2025).

certification. Third, this case is on the verge of a final judgment that will support an appeal as of right. An interlocutory appeal at this late date would risk burdening the Delaware Supreme Court with multiple appeals. The final order doctrine calls for limiting the controller to a single appeal.

## I.    FACTUAL BACKGROUND

Sears Hometown and Outlet Stores, Inc. (the "Company") was a publicly traded entity. Sears Holdings Corporation ("Holdings") controlled it. Edward "Eddie" S. Lampert controlled Holdings.

In 2019, the Company and Holdings agreed to a merger. Each Company share was converted into the right to receive $3.21 from Transform Holdco LLC ("Parent"), an entity that would emerge as the Company's post-merger parent (the "Merger").[7] Parent was a wholly owned subsidiary of Holdings' successor. Lampert controlled every entity in the structure.

Stockholder plaintiffs challenged the Merger, contending Lampert and other Company fiduciaries breached their duties by engaging in a squeeze-out transaction at an unfair price (the "Plenary Action"). Cannon Square, LLC (the "Fund") asserted its right to an appraisal and sought a judicial determination of the fair value of its shares (the "Appraisal Proceeding"). The court entered an order coordinating the Plenary Action and the Appraisal Proceeding for purposes of discovery and trial.

---

[7] This description oversimplifies a more complex transaction structure, but suffices for purposes of this decision.

3

In 2022, the Company and Parent filed voluntary petitions for bankruptcy. By seeking appraisal, the Fund became an unsecured general creditor of the Company. The Fund was also an unsecured general creditor of Parent, because if its appraisal claim terminated, then it could assert a contractual right to the merger consideration. With the Company and Parent insolvent, both claims became worthless.

The Fund therefore chose to join the Plenary Action. That brought the size of the class to 10,579,356 shares: the original 10,321,048 non-dissenting shares plus another 258,308 dissenting shares held by the Fund.

In 2024, the court issued the *Post-Trial Opinion* finding that the Merger was not entirely fair and that Lampert had breached his duty of loyalty.[8] Incorrectly operating as if all class members received the merger consideration, the court awarded compensatory damages "equal to the difference between what the minority stockholders received and the fair value of the company."[9] After correcting an error, that award amounted to $0.85 per share. With 10,579,356 shares in the class, Lampert owed damages of $8,992,452.60, plus interest.

Because the Fund sought appraisal, the Fund had not received the merger consideration. If the Fund received the same $0.85 per share as the other class members, then the Fund would not be made whole. Instead, the Fund would be penalized for seeking appraisal by only receiving approximately one-third of the

[8] *Post-Trial Op.*, 309 A.3d at 504.

[9] *Id.* at 485.

4

original merger consideration. Yet if Lampert had to make the Fund whole, then his liability for damages would increase by an additional 9.2%, or $829,168.68.[10] He would owe total damages of $9,821,621.28, plus interest.[11]

The Fund intervened to assert its entitlement to the full fair-price damages award. After the Fund intervened, the plaintiffs in the Plenary Action settled with Lampert for total proceeds of $10 million (the "Settlement"). The Settlement heightened the significance of the Fund's entitlement. Assuming a pro rata distribution of settlement consideration across 10,579,356 shares in the class, each share would receive $0.95, an 11.6% increase of ten cents per share over the *Post-Trial Opinion* award.

The Fund, however, could challenge that result as falling outside a range of reasonableness, because while other stockholders would receive consideration totaling 129.6% of the original merger consideration, the Fund would receive just 29.6%. Based on that disparity, the Fund might convince the court to reject the Settlement.

By contrast, if the Fund could recover the merger consideration of $3.21 per share off the top, then the Fund would receive a unique payment of $829,168.68, representing 8.2% of the settlement fund. That would leave $9,170,831.32 to spread across the class members, including the Fund. At that point, each share in the class

---

[10] ($4.06 − $0.85) × $258,308 = $829,168.68.

[11] $8,992,452.60 + $829,168.68 = $9,821,621.28.

would receive $0.87 per share. Every stockholder, including the Fund, would receive total consideration of $4.08 per share ($3.21 + $0.87). That settlement would achieve for the class a recovery equal to 127.1% of the original merger consideration, not much different than the 129.6% of the original merger consideration that the plenary class members other than the Fund otherwise would receive at the Fund's expense. If the Fund convinced the court to take that approach, the court might still approve the Settlement.

In the *Remedy Opinion*, the court held that the Fund was entitled to the full compensatory damages award of $4.08 per share, just like the other class members. Unlike the other class members, the Fund had not received the merger consideration, so the Fund did not face any offset.

After the court issued the *Remedy Opinion*, the class plaintiffs asked the court to take the hearing on the proposed settlement off the calendar and stay the deadlines in the case scheduling order. Lampert then asked the court to certify an interlocutory appeal from the *Remedy Opinion* (the "Application"). This decision denies the Application.

## II.    LEGAL ANALYSIS

Supreme Court Rule 42 governs the certification of interlocutory appeals. "[T]he purpose of Rule 42 is to prevent wasteful piecemeal litigation from overwhelming the docket of the Supreme Court."[12]

---

[12] *Stein v. Blankfein*, 2019 WL 3311227, at *1 (Del. Ch. July 23, 2019).

Rule 42 cautions that "[i]nterlocutory appeals should be exceptional, not routine, because they disrupt the normal procession of litigation, cause delay, and can threaten to exhaust scarce party and judicial resources."[13] Certification is "generally not favored."[14] Thus, an application for interlocutory appeal "requires a strict analysis by the trial court."[15]

Rule 42 states that "[n]o interlocutory appeal will be certified by the trial court or accepted by this Court unless the order of the trial court decides a substantial issue of material importance that merits appellate review before a final judgment."[16] To apply this test, the trial court first asks whether the interlocutory order decided a substantial issue of material importance. If that requirement is met, then the trial court must analyze whether "there are substantial benefits that will outweigh the certain costs that accompany an interlocutory appeal."[17] The rule identifies eight factors relevant to the assessment.[18] Only if both criteria are met can the trial court certify the interlocutory appeal.

---

[13] Supr. Ct. R. 42(b)(ii).

[14] Supr. Ct. R. 42 cmt.

[15] *Chemours Co. v. DowDuPont Inc.*, 2019 WL 2404817, at *1 (Del. Ch. June 7, 2019).

[16] Supr. Ct. R. 42(b)(i).

[17] Supr. Ct. R. 42(b)(ii).

[18] Supr. Ct. R. 42(b)(iii)(A)–(H).

This decision denies the Application. That ruling does not foreclose Lampert's appeal. This court lacks the power to determine whether the Delaware Supreme Court will hear an appeal. This decision merely reflects this court's recommendation that the Delaware Supreme Court not accept the appeal.

## A.     Whether The Application Is Timely

As a threshold matter, certification is denied because the Application is untimely. Although this court can extend the deadline for good cause shown, Lampert has not established good cause. He has provided a reason that could amount to excusable neglect, but excusable neglect is not good cause.

Under Supreme Court Rule 42, a party must file an application for certification of an interlocutory appeal "within 10 days of the entry of the order from which the appeal is sought or such longer time as the trial court, in its discretion, may order for good cause shown."[19] Rule 42(a) specifies that "[a]ll time periods under this rule should be calculated under Supreme Court Rule 11."[20] Under that rule, "[w]hen the period of time prescribed or allowed is less than 7 days, intermediate Saturdays, Sundays and other legal holidays shall be excluded in the computation."[21]

---

[19] Supr. Ct. R. 42(c)(i).

[20] Supr. Ct. R. 42(a).

[21] Supr. Ct. R. 11(a).

8

Untimely applications for interlocutory appeal are generally denied. [22] In *Envirokare*, the defendants filed their application two days late. After realizing their mistake, they moved for an extension, admitted that they either misconstrued Rule 42(a) or did not read it, and argued that their appeal should not be foreclosed on that basis.[23] The court found that those explanations were "not 'good cause' under Rule 42 nor a good reason to extend the deadline."[24]

In *Kulak*, the defendants filed their application nine days late. The court had issued a combination of rulings, most from the bench followed by others in a letter opinion issued eleven days later. The defendants asked the court to certify an interlocutory appeal from both the bench ruling and the letter opinion. Their application was timely for the letter opinion but late for the bench ruling. The court denied the appeal from the bench ruling as untimely under Supreme Court Rule 11.[25]

Here, the court issued the *Remedy Opinion* on February 13, 2025. The tenth day after that date—counting weekends as Supreme Court Rule 11 instructs—is February 23. Because February 23 was a Sunday, Supreme Court Rule 11 rolls the

---

[22] *E.g.*, *J.C. Opco, LLC v. Hudson Hosp. Holdco, LLC*, 284 A.3d 725, 2022 WL 4451489, at *1 (Del. Sept. 23, 2022); *Hazzard v. Harris*, 131 A.3d 324, (Del. Jan. 22, 2016) (TABLE); *Jackerson v. Vaughn*, 106 A.3d 1049 (Del. Jan. 22, 2015) (TABLE); *Kulak v. On*, 2024 WL 3178228, at *1 (Del. Ch. June 26, 2024) (ORDER), *aff'd* 320 A.3d 236 (Del. 2024) (TABLE); *Envirokare Composite Corp. v. D&D Mfg., LLC,* 2024 WL 1528695, at *1 (Del. Ch. Apr. 9, 2024) (ORDER).

[23] 2024 WL 1528695, at *1, n.8.

[24] *Id.* at *1.

[25] *Kulak*, 2024 WL 3178228, at *1.

9

deadline forward to the next day that is neither a weekend nor holiday. Lampert's deadline was Monday February 24. He filed on February 27, three days late.

After the Fund raised the timeliness issue, Lampert sought leave to file a reply brief addressing it. The court granted that request. In his reply, Lampert acknowledged that counsel erred by calculating time under Chancery Court Rule 6 rather than Supreme Court Rule 11. That explanation could support a finding of excusable neglect, but not a finding of good cause.

The Application is therefore denied as untimely.

## B. Whether The Remedy Opinion Decided A Substantial Issue Of Material Importance

Although the timing issue is dispositive, the Delaware Supreme Court could disagree with this court's assessment of the equities and approve the requested extension. This decision therefore proceeds to analyze the Application on the merits.

When considering an application for interlocutory appeal, the trial court must first consider whether the interlocutory order decided a substantial issue of material importance. "The 'substantial issue' requirement is met when an interlocutory order decides a main question of law which relates to the merits of the case, and not to

collateral matters."[26] As a general matter, "[t]he substantial issue requirement is not met where no final determination was made on the merits of plaintiff's claims."[27]

Lampert asserts that the *Remedy Opinion* addressed a substantial issue by quantifying the Fund's entitlement to damages.[28] But that issues does not go to the merits of the claims. The court decided the merits in the *Post-Trial Opinion*, issued over a year ago on January 24, 2024. The *Remedy Opinion* decided whether the Fund's recovery warranted being offset by merger consideration it never received.

Lampert next makes a policy argument by claiming that "the [Remedy] Opinion effectively offloads the credit risk of an appraisal proceeding onto defendants in a fiduciary action, potentially including outside directors."[29] That is a classic attempt at a scary soundbite, and Lampert tries to heighten its effect by claiming that "[d]efendants are on the hook for those supposed damages for years even where, as here, there is no showing of proximate cause between any act or omission of the fiduciary defendants and claimant's decision to forego the merger consideration."[30]

---

[26] *Sprint Nextel Corp. v. iPCS, Inc.*, 2008 WL 2861717, at *1 (Del. Ch. July 22, 2008); *accord Castaldo v. Pittsburgh-Des Moines Steel Co.*, 301 A.2d 87, 87 (Del. 1973).

[27] *JB & Margaret Blaugrund Found. v. Guggenheim Funds Inv. Advisors*, 2023 WL 2562933, at *3 (Del. Ch. Mar. 17, 2023) (ORDER) (cleaned up).

[28] App. ¶ 11.

[29] *Id.* ¶ 12.

[30] Id.

Not so. Corporate fiduciaries only have to pay damages if a court finds that they breached their fiduciary duties. A disloyal fiduciary has to pay damages equal to the harm suffered by its beneficiary. A disloyal fiduciary therefore faces the risk that a former stockholder will not receive any offset against the damages the disloyal fiduciary caused. The causal factor for owing damages is disloyalty, not whether a stockholder seeks appraisal or whether the surviving corporation is creditworthy. Nor is a judgment likely against outside directors for breach of the duty of loyalty. Under *Cornerstone*,[31] exculpated outside directors are out of the case. With no conflict of interest, an outside director only could be liable if the trial court found the outside director had acted in bad faith and the Delaware Supreme Court affirmed that finding. That is hardly likely to happen, and if it did, *then that director was adjudicated to be a faithless and disloyal fiduciary*. The *Remedy Opinion* does not force any corporate fiduciaries to guarantee fair value awards. The *Remedy Opinion* simply recognizes that disloyal fiduciaries owe damages to their beneficiaries.

The *Remedy Opinion* therefore does not meet the substantial issue requirement. Certification is denied on that separate and independent basis.

## C.   Whether The Remedy Opinion Warrants Appellate Review Before A Final Judgment

When considering the merits of an application for interlocutory appeal, the trial court also must consider whether the ruling warrants appellate review "before

---

[31] *In re Cornerstone Therapeutics Inc, S'holder Litig.*, 115 A.3d 1173 (Del. 2015).

12

a final judgment."[32] When analyzing that issue, Rule 42(b)(iii) instructs trial courts to consider eight factors. Lampert relied on five: (A), (B), (C), (G), and (H).

### 1. Whether The Remedy Opinion Involves A Question Of First Impression

Lampert start with factor (A), which asks whether the "[i]interlocutory order involves a question of law resolved for the first time in this State."[33] That factor does not support certification.

The *Remedy Opinion* applied settled precedent, starting with the *Technicolor* decision from 1988 and continuing with this court's decisions in *Emerging Communications*, *Dole Food*, and *Mindbody*. The *Remedy Opinion* noted that the issue of determining the appropriate recovery for plenary class members who sought appraisal "rarely comes up."[34] When an issue has come up "rarely" and decisions have addressed it consistently, the issue does not present a question of first impression.[35]

Lampert tries to argue otherwise by claiming the *Remedy Opinion* addressed

---

[32] Supr. Ct. R. 42(b)(i).

[33] Supr. Ct. R. 42(b)(iii)(A).

[34] *Remedy Op.*, 2024 WL 5403534, at *2.

[35] Lampert also cites the court's mid-argument statements about whether the issue had been. App. ¶ 19. Trial judges engage in discussion with counsel during argument. Those discussions are not rulings. Holding them against the trial judge is a good way to induce trial judges not to engage with counsel during argument, resulting in unasked and unanswered questions and a decline in the quality of justice. Here, after reviewing the available authorities in detail, the *Remedy Opinion* concluded that *Technicolor*, *Emerging Communications*, *Dole Food*, and *Mindbody* controlled the case.

13

an important question of first impression: whether the Court erred in ruling that an appraisal arbitrageur who bought stock after announcement of the transaction to pursue appraisal and opted to join the class in a plenary class action after the appraisal respondent declared bankruptcy, is entitled to additional damages from the remaining fiduciary defendants, over and above upside damages received by all other class members, in an amount equal to the merger consideration the appraisal petitioner voluntarily forwent to pursue appraisal.[36]

That paragraph offers a grab bag of potential distinctions.

Whether the Fund was an "an appraisal arbitrageur who bought stock after announcement of the transaction to pursue appraisal" does not affect the *Technicolor* analysis, and Lampert did not argue that it should in the briefing that led to the *Remedy Opinion*. The same is true for Lampert's observation about the Fund having "opted to join the class in a plenary action after the appraisal respondent declared bankruptcy." Under *Technicolor*, an appraisal claimant can opt for the plenary remedy at any point until final judgment. When or why does not matter.

Continuing to spitball distinctions, Lampert observes that "*Technicolor* was not a class action, and the appraisal petitioner and plenary action plaintiff were the same (Cinerama)."[37] So what? A class action requires common questions of law and fact.[38] The Fund could opt for the class recovery, just like the appraisal petitioners in

---

[36] App. ¶ 1.

[37] *Id.*

[38] *See* Ch. Ct. R. 23(a).

14

the class actions that resulted in judgments in *Emerging Communications*, *Dole Food*, and *Mindbody*.

Lampert also mischaracterizes Cinerama's fiduciary duty claim as contending only that "the merger was void *ab initio* by reason of fraud."[39] The *Remedy Opinion* corrected that mischaracterization, noting that "Cinerama also asserted claims for breach of fiduciary duty, waste of assets, self-dealing, unfair dealing, accepting a grossly unfair price, and carrying out an unlawful merger"[40] and further observed that Cinerama "asked not only for rescission but also for rescissory damages and compensatory damages."[41] Lampert merely repeats his mischaracterization.

At best for Lampert, the *Remedy Opinion* applied the rule from *Technicolor*, *Emerging Communications*, *Dole Food*, and *Mindbody* to somewhat new facts. The application of settled law to new facts does not mean that the court decided a question of first impression.[42]

---

[39] App. ¶ 21.

[40] *Remedy Op.*, 2024 WL 5403534, at *12.

[41] *Id.* at *13.. Cinerama filed a separate plenary action asserting "multiple acts of wrongdoing and breaches of fiduciary duty in the merger, including: waste of assets, self-dealing, intentional and negligent misrepresentation, unfair dealing, accepting a grossly unfair price for Technicolor stock, and carrying out an unlawful merger in violation of Technicolor's certificate of incorporation." *Technicolor*, 542 a.2d at 1186. Cinerama sought either (i) rescission of the merger or (ii) an award of rescissory damages, plus compensatory damages "for all losses resulting from defendants' wrongdoing." *Id.*

[42] *See Riker v. Teucrium Trading, LLC*, 2023 WL 4411609, at *2 (Del. Ch. July 7, 2023) ("[T]he Ruling did not present an issue of first impression; it considered a factual situation that has some differences from applicable precedent.").

Lampert also strives to identify an issue of first impression by claiming that "[a] premise of the Court's Opinion in this case . . . was that requiring Lampert to pay the merger consideration as damages was warranted to prevent unjust enrichment."[43] That was not a "premise" of the *Remedy Opinion.*

The *Remedy Opinion* contains one sentence that refers to unjust enrichment, and it appears in a section that responds to Lampert's effort to portray the Fund as seeking something extra in damages. The *Remedy Opinion* devotes seven paragraphs spanning three Westlaw pages to addressing Lampert's argument that the Fund was receiving something extra in damages.[44] Lampert repeats that argument in the Application, claiming the *Remedy Opinion* awarded the Fund "additional damages from the remaining fiduciary defendants, over and above upside damages received by all other class members."[45] In fact, the *Post-Trial Opinion* established that all of the class members possessed a damages entitlement equal to a fair price for their shares. The *Remedy Opinion* applied an offset for those stockholders who received the merger consideration. The court did not award the Fund "additional damages." Everyone received the same damages entitlement.

Regardless, after concluding that the Fund possessed the same damages entitlement as every other class member, the *Remedy Opinion* added the reference to

---

[43] App. ¶ 23.

[44] *Remedy Op.,* 2024 WL 5403534, at *9–11.

[45] App. ¶ 1.

unjust enrichment that Lampert now claims was a "premise" of the decision. The sentence stated: "It [the equal damages entitlement] also ensures that Lampert is not unjustly enriched by keeping the Merger Consideration that the Fund otherwise would have received."[46] That's it. Lampert does not describe the *Remedy Opinion* accurately.

Factor (A) of Rule 42(b)(iii) therefore does not support certification. The *Remedy Opinion* applied settled principles of law. As the *Technicolor* decision explained, an appraisal claim and plenary claim are profoundly different.[47] Once the Fund opted to pursue its plenary claim, the appraisal proceeding was no longer relevant. That was not an issue of first impression. That's *Technicolor*.

## 2. Whether Decisions Of The Trial Courts Conflict

Lampert next relies on factor (B), which supports certification when "[t]he decisions of the trial courts are conflicting upon the question of law."[48] This factor does not support certification either.

---

[46] *Remedy Op.*, 2024 WL 5403534, at *11.

[47] *Technicolor*, 542 A.2d at 1187 ("To summarize, in a section 262 appraisal action the only litigable issue is the determination of the value of the appraisal petitioners' shares on the date of the merger, the only party defendant is the surviving corporation and the only relief available is a judgment against the surviving corporation for the fair value of the dissenters' shares. In contrast, a fraud action asserting fair dealing and fair price claims affords an expansive remedy and is brought against the alleged wrongdoers to provide whatever relief the facts of a particular case may require. In evaluating claims involving violations of entire fairness, the trial court may include in its relief any damages sustained by the shareholders."); *see Remedy Op.*, 2024 WL 5403534, at *7 (same).

[48] Supr. Ct. R. 42(b)(iii)(B).

17

Lampert tries to create a conflict by listing factual differences between this case and *Technicolor*, primarily pointing out that in *Technicolor*, the same plaintiff brought the appraisal proceeding and then filed for breach of fiduciary duty, while here the Fund sought appraisal while other stockholders pursued claims for breach of fiduciary duty. Lampert also points out that *Technicolor* was not a class action. Neither distinction makes a difference.

The *Technicolor* case holds that a former stockholder who opts for appraisal can also pursue a claim for breach of fiduciary duty where the facts of the case support it, then later choose between either the appraisal remedy or the plenary damages award, so long as the former stockholder does not receive a duplicative recovery.[49] It does not matter whether the same former stockholder takes the lead in both actions or either action. Nor does it matter whether the plenary action proceeds as a class action.

Lampert also argues that the *Remedy Opinion* conflicts with *Technicolor* because the court did not require that the Fund prove that Lampert had any role in causing the bankruptcies of the Company and Holdings, ignoring the fact that Lampert controlled both entities. Regardless, under the *Technicolor* framework, the appraisal proceeding and the plenary action are separate and distinct legal tracks, marked by a series of distinguishing features.[50] If a former stockholder chooses

---

[49] *Technicolor*, 542 A.2d at 1188

[50] *See id.* at 1187–88.

18

appraisal, then the plenary action is irrelevant, except for purposes of an offset and to the extent factual findings in the plenary action have preclusive effect. Likewise, if the former stockholder chooses the plenary remedy, then the appraisal action is irrelevant, except for purposes of an offset and to the extent factual findings in the plenary action have preclusive effect.

Under the *Technicolor* framework, the reason why the former stockholder opts for a particular path is irrelevant. A rational former stockholder will always choose the path that yields the greater net return. It does not matter whether the greater net return results from parties litigating both actions to judgment, from a settlement of one action or the other, or due to a bankruptcy filing that negates the possibility of any recovery in one of the two cases.

The *Technicolor* and *Mindbody* decisions recognize that a former stockholder need not choose between the appraisal path and the plenary path until the time of judgment, but that does not mean a former stockholder cannot choose earlier. Here, the Fund made its choice after the bankruptcy filings shut down the appraisal path. From that point on, the appraisal path became irrelevant. The Fund did not have any obligation to prove that Lampert had some causal role in defeating a potential recovery in the appraisal proceeding. When the Fund opted for the plenary path, there was no judgment in the appraisal proceeding that could have a preclusive effect or give rise to an offset. The appraisal proceeding was a nullity.

The irrelevance of the appraisal proceeding once the Fund opted for a plenary recovery also defeats Lampert's contention that the *Remedy Opinion* had to make "a

19

finding as to causation by the plenary action defendant and the merger consideration as an element of damages."[51] Lampert inflicted damages of $4.06 per share on all of the Company's unaffiliated stockholders by taking their shares through a squeeze-out merger. That reality establishes causation. The stockholders who accepted the $3.21 per share possessed that amount as an offset. If the appraisal action had generated a positive amount, the Fund would have possessed that amount as an offset. Instead, the Fund had nothing to offset. The contention that the Fund has to prove its loss of the merger consideration as an element of damages relieves the faithless fiduciary of his obligation to make his beneficiaries whole from his fiduciary breach.

There is no conflict between the *Remedy Opinion* and other authorities. Factor (B) does not support certification.

### 3. Whether The Remedy Opinion Involves The Construction Of A Statute That The Supreme Court Should Settle Now

Lampert next relies on factor (C), which supports certification when "[t]he question of law relates to the constitutionality, construction, or application of a statute of this State, which has not been, but should be, settled by this Court in advance of an appeal from a final order."[52] This factor does not support certification.

---

[51] App. ¶ 27.

[52] Supr. Ct. R. 42(b)(iii)(C).

Factor (C) contemplates a statutory question that "has not been . . . settled by" the Delaware Supreme Court. In this case, the Delaware Supreme Court settled the statutory questions in *Technicolor*.

Lampert first complains that the appraisal statute calls for the surviving corporation to pay any fair value determination.[53] True, and in this case there was no fair value determination. Instead, the Fund opted to forgo appraisal and participate in the plenary action, precisely as *Technicolor* allows. Once the Fund made that election, the appraisal statute no longer mattered. Rather than seeking a judicial determination of fair value to be paid by the surviving corporation, the Fund sought damages for a breach of fiduciary duty equal to a fair price for its shares, less any amounts already received. Because the Fund had not already received any amounts, the Fund was entitled to a fair price. The *Technicolor* decision already answered the statutory question.

Lampert next notes that the language of the appraisal statute prevents a former stockholder from unilaterally withdrawing its demand for appraisal after sixty days.[54] He then observes that the surviving corporation did not consent to the Fund's decision to pursue a plenary recovery. True, and the surviving corporation in *Technicolor* did not consent to the appraisal petitioner also pursuing a plenary claim

---

[53] 8 *Del. C.* § 262(i).

[54] 8 *Del. C.* § 262(i).

either.[55] The fiduciary defendants in *Technicolor* relied on the same statutory language that Lampert cites, and the Delaware Supreme Court held that the former stockholder could pursue *both* its appraisal claim *and* the plenary action to judgment. Here again, the *Technicolor* decision already answered the statutory question. Lampert "respectfully disagree[s]"[56] with that interpretation of *Technicolor*, but he never offers a different interpretation. Accepting Lampert's arguments would require overruling *Technicolor*.

Regardless, factor (C) asks whether the statutory issue needs to be resolved "in advance of an appeal from a final order."[57] For the reasons discussed below, Lampert will soon be able to appeal from a final order. There is no need to address his objections to the *Remedy Opinion* via a separate appeal.

Factor (C) does not support interlocutory review.

### 4. Whether Review Would Terminate The Litigation

Lampert also relies on factor (G), which asks whether "[r]eview of the interlocutory order may terminate the litigation."[58] Lampert begins the Application with this factor, implying that he views it as his best argument. It is the weakest.

---

[55] *See* 542 A.2d at 1186.

[56] App. ¶ 2.

[57] Supr. Ct. R. 42(b)(iii)(C).

[58] Supr. Ct. R. 42(b)(iii)(G).

22

Lampert initially acknowledges that factor (G) does not apply, noting that "this is not a situation where reversal may immediately terminate the case."[59] He then argues that "reversal here would have the same practical effect,"[60] claiming that "if [the Settlement] remains in effect and is approved by the Court," then it would (i) "resolve numerous open post-trial issues that the Court would otherwise need to decide," (ii) "obviate an appeal of the post-trial opinion," and (iii) "end the litigation."[61] He then asserts that the *Remedy Opinion* "upends the Settlement, as the Court appears to have observed."[62]

First, approving the Settlement would not resolve "numerous open post-trial issues that the Court would otherwise need to decide." The Application did not identify any open post-trial issues, and parties have not done so elsewhere either.[63]

---

[59] App. ¶ 14.

[60] *Id.*

[61] *Id.*

[62] *Id.*; *see* App. ¶ 2 (claiming that the *Remedy Opinion* "upend[s] the Settlement with the class that the appraisal petitioner decided to join" and that "[a]ppellate review of the [Remedy] Opinion could prevent intra-class disputes from derailing an all-but-nearly-resolved litigation").

[63] The *Post-Trial Opinion*, which issued on January 24, 2024, asked the parties to identify any issues that remained for decision within thirty days. Dkt. 274. Rather than identifying open issues, the parties proposed extending the deadline for identifying issues until "fifteen days after the Court decides Defendants' Motion for Reargument." Dkt. 280. The court approved that proposal. Dkt. 281. The court granted the motion for regarding on July 2, 2024. Dkt. 286. But the parties still did not identify open issues. Instead, they stipulated that they would do so by August 2, 2024, unless they submitted a settlement instead. Dkt. 289. The court again deferred

The only remaining motion the court envisions hearing would be an application for an award of fees and expenses. That is an issue that the court will have to address even if the court approves the Settlement.

Second, approving the Settlement would not obviate an appeal. Although it would take the merits of the *Post-Trial Opinion* off the table, the Fund could appeal by right from the final order approving the Settlement. If the court allocated the Settlement consideration *pro rata* across the entire class so that the Fund only received one fifth of what other class members received, then the Fund might well appeal.

Third, interlocutory review would not end the litigation. A reversal of the *Remedy Opinion* only would result in a remand to consider the Settlement.

Fourth, and most important, the court does not agree that the *Remedy Opinion* upends the Settlement, and the court has not "already observed" that it did. Neither of Lampert's citations to the *Remedy Opinion* supports that assertion.[64] To the contrary, the *Remedy Opinion* stated: "The court could offer its thoughts on the Settlement now to provide guidance to the parties, but the Settlement is scheduled for its own hearing at a later date. In the interim, the parties should have the first

---

the parties and approved their proposal. Dkt. 291. The parties never identified open issues; they submitted their settlement. Dkt 318.

[64] The Application cites pages 9 and 37 of the *Remedy Opinion*. Neither citation supports Lampert's characterization.

24

crack at responding to this decision."[65] Those two sentences do not offer any view on the Settlement. They say precisely the opposite.

Effectively, Lampert argues that an immediate appeal could save some litigation costs. But the possibility that a reversal could save litigation costs "is not unique to [this] application and would otherwise warrant certification after nearly every trial court decision even in cases lacking 'exceptional' circumstances." [66] Moreover, although Lampert implies that this is a case where the parties would face "extensive litigation . . . to bring this matter to a final resolution,"[67] there is little left to do, and the possibility of a post-appeal, post-reversal approval of the Settlement does not warrant an interlocutory appeal now.

Factor (G) does not support certification.

### 5. Whether Review Would Serve Considerations Of Justice

As his final basis for interlocutory appeal, Lampert invokes factor (H), which asks whether "[r]eview of the interlocutory order may serve considerations of justice."[68] In making this argument, Lampert relies on the same points argued

---

[65] *Remedy Op.*, 2024 WL 5403534, at *16.

[66] *In re Carvana Co. S'holders Litig.*, 2022 WL 4661841, at *4 (Del. Ch. Oct. 3, 2022) (ORDER).

[67] App. ¶ 17 (quoting *In re Terraform Power, Inc. S'holders Litig.*, 2020 WL 6889189, at *1 (Del. Ch. Nov. 24, 2020)).

[68] Supr. Ct. R. 42(b)(iii)(H).

25

previously. They do not fare any better as arguments under factor (H). This is not a case where the interests of justice support certification.

## D.     The Balancing

As a final step, Rule 42 directs the trial court to engage in balancing:

> After considering [the eight] factors and its own assessment of the most efficient and just schedule to resolve the case, the trial court should identify whether and why the likely benefits of interlocutory review outweigh the probable costs, such that interlocutory review is in the interests of justice. If the balance is uncertain, the trial court should refuse to certify the interlocutory appeal.[69]

There must be "substantial benefits that will outweigh the certain costs that accompany an interlocutory appeal."[70] Although the prior steps are again dispositive, this decision considers the balancing in the interest of completeness.

Assuming for the sake of argument that grounds for interlocutory appeal existed, then the balancing would not be a close call. While it is always helpful to have the Delaware Supreme Court's views on an issue, this case is nearing its end, and the Delaware Supreme Court can readily address the *Remedy Opinion* as part of an appeal from a final order.

The *Delaware Public Schools Litigation* is instructive. There, the defendants asked the court to certify an appeal from a decision addressing their entitlement to a fee award. The trial court denied the request, reasoning that the entitlement to a fee award was not a substantial issue and that the Delaware Supreme Court could soon

---

[69] Supr. Ct. R. 42(b)(iii).

[70] Supr. Ct. R. 42(b)(ii).

26

hear that issue as part of a single appeal.[71] The Delaware Supreme Court agreed that "the better course of action is to quantify the fee award and enter an award as a partial final judgment," because "[d]oing so will allow the Court to review the legal basis for, and the reasonableness of, the fee award in one appeal."[72]

The same reasoning applies to this case. The court has issued both the *Post-Trial Opinion* and the *Remedy Opinion*, so there are three likely scenarios:

*First*, assuming the Settlement is withdrawn, the only remaining issue is an application for a fee award. The court can address that promptly, then Lampert can appeal by right from a final order.

*Second*, assuming the Settlement is not withdrawn, the court could approve it and enter a final order. At that point, the Fund could appeal by right.

*Third*, assuming the Settlement is not withdrawn, the court might not approve it. The case would proceed as in the first scenario.

Under each scenario, the Delaware Supreme Court soon will be able to consider the *Remedy Opinion* as part of an appeal from a final order. As in *Delaware Public Schools Litigation*, there is no need for an appeal from the *Remedy Opinion* to jump the queue.

Admittedly, in the first situation, the parties likely will raise multiple issues on appeal. For his part, Lampert has already signaled his intent to challenge the *Post-*

---

[71] *In re Delaware Pub. Sch. Litig.*, 2022 WL 1220075 (Del. Ch. Apr. 26, 2022).

[72] *In re Delaware Pub. Sch. Litig.*, 2022 WL 1552592, at *2, 277 A.3d 296 (Del. 2022).

27

*Trial Opinion* on many grounds.[73] The only reason for the Delaware Supreme Court to accept an interlocutory appeal from the *Remedy Opinion* would be if the justices wanted to hive off a single issue for separate treatment. From the trial judge's perspective, hearing a separate appeal does not seem warranted on an issue where the *Technicolor* decision settled the law in 1988 and this court has followed *Technicolor* in *Emerging Communications*, *Dole Food*, and *Mindbody*. But a trial judge cannot speak for the Delaware Supreme Court.

Because there are not substantial benefits from an interlocutory appeal that outweigh its costs, Rule 42(b)(iii) instructs the trial court to deny certification.

## III. CONCLUSION

Ultimately, whether to permit an interlocutory appeal lies in the discretion of the Delaware Supreme Court. The justices' views, not the trial court's, determine whether the request will be granted. This court's role under Rule 42 is to make a recommendation. In this case, that recommendation is for the Delaware Supreme Court to refuse the interlocutory appeal.

---

[73] *See* Dkt. 275 at 4 n.3 ("Defendants believe the Opinion contains other appealable issues and reserve their rights to raise those issues on appeal. The issues raised herein are those Defendants believe are most appropriately addressed through a motion for reargument . . . .").